Howard S. KLOTZ, individually, and as Trustee of the Rose Klotz Trust and on behalf of himself and all others similarly situated, Plaintiff Below, Appellant,

v.

WARNER COMMUNICATIONS, INC., and Time Warner, Inc., Defendants Below, Appellees.

No. 222, 1995.

Supreme Court of Delaware.

Submitted: Nov. 21, 1995.

Decided: Dec. 18, 1995.

Pamela S. Tikellis, and Cynthia A. Calder, Chimicles, Jacobsen & Tikellis, Wilmington; Daniel W. Krasner (argued) and Peter C. Harrar, New York City, of counsel for Appellants.

Charles F. Richards, Jr. (argued) and Matthew J. Ferretti, Richards, Layton & Finger, Wilmington; Max S. Gitter, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel for Appellees.

Before WALSH, HOLLAND and BERGER, JJ.

WALSH, Justice:

In this appeal from the Court of Chancery, we are required to interpret the market exception to the appraisal statute, 8 *Del.C.* § 262. Specifically, the plaintiff below-appellant contends that the market exception to appraisal does not apply if a merger is accomplished through the use of written consents, as occurred in this case. Appellant contends the Court of Chancery erred in denying him appraisal rights after that merger. The court below held that the fact that the merger was approved by written consents instead of a shareholder meeting was irrelevant, and therefore the merger fell within the market exception to the appraisal statute (a.k.a. the "market out"). Because the language of the statute does not provide appraisal rights nor do policy reasons support such a result, we affirm the opinion of

the Court of Chancery dismissing the appraisal petition.

## I.

The plaintiff-appellant, Howard S. Klotz ("Klotz"), was a holder of Warner common stock prior to the well known Time–Warner merger.[1] Under the terms of a June 16, 1989 amended merger agreement, Time purchased 100 million shares of Warner common stock through a tender offer, giving Time 59.3% of the outstanding shares at the completion of the tender offer. One day later, on July 25, 1989, Time renamed itself Time–Warner. Pursuant to 8 *Del.C.* § 228, Warner then merged into Time–Warner by written consent of Warner's new controlling stockholder and merger partner instead of by vote at a meeting of the stockholders. Warner sent its other stockholders notice of the merger and an Information Statement/Prospectus on December 6, 1989 which informed them that they had no appraisal rights under Delaware law.[2]

Klotz, in obvious disagreement with the prospectus' view, filed a complaint in the Court of Chancery on behalf of himself and others similarly situated, arguing that the market-out exception did not apply to mergers approved by written consent. The defendant companies moved to dismiss the complaint pursuant to Court of Chancery Rule 12(b)(6), contending that Delaware law afforded no appraisal remedy where the shares can be traded in a public market. In dismissing the plaintiff's complaint, the Court of Chancery held that the structure and plain meaning of the statute did not eliminate the market-out exception in the case of written approval of a merger.

## II.

We review *de novo* a dismissal of a complaint under Court of Chancery Rule 12(b)(6). *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, Del.Supr., 654 A.2d 403, 406 (1995). The Court of Chancery ruled that the statute's plain meaning did not allow the plaintiff appraisal rights. In construing the statute, the Court of Chancery found as a matter of law that the plaintiff had not stated a claim upon which relief could be granted. Under our standard of plenary review, we are free to make our own determination whether the statute grants appraisal rights in this case. *See Arnold v. Society for Sav. Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1287 n. 30 (1994).

## III.

To resolve the issue presented, this Court must "ascertain and give effect to the intention of the Legislature as expressed in the Statute itself." *Keys v. State*, Del.Supr., 337 A.2d 18, 22 (1975). In seeking this intent, we "read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.01 (5th ed. 1992). Thus, we begin our review of the Vice Chancellor's decision by analyzing the basic structure of the statute.

Section 262 generally grants appraisal rights for all shareholders who have not voted in favor of a merger or consolidation and have timely perfected such rights. 8 *Del.C.* § 262(a), (d). However the statute also contains a market exception to appraisal rights: appraisal is not available if the shares to be appraised were widely held or traded on a national securities exchange.[3] 8 *Del.C.* § 262(b)(1). Subsection (b) then sets out two exclusions to the market exception. The first, contained in § 262(b)(2), provides that appraisal rights are available notwithstand-

---

**1.** This merger previously has been the subject of litigation before the Delaware courts. *See Paramount Communications, Inc. v. Time, Inc.*, Del. Ch., C.A. No. 10670, 1989 WL 79880 Allen, C., (July 14, 1989), *aff'd*, Del.Supr., 571 A.2d 1140 (1989).

**2.** The Warner prospectus recited that "stockholders of the company, other than Time Warner, are not being asked to vote for, or consent to, the

Merger Agreement, and the[ir] vote ... is not required for the consummation of the Merger.... Under the DGCL, holders of Company Common Stock are not entitled to appraisal rights with respect to the Merger."

**3.** Section 262(b)(1) also contains another exception: no appraisal rights are available if no vote of the shareholders was required pursuant to § 251(f).

ing the fact that the shares are widely held or publicly traded if those shares must be exchanged for anything other than (a) shares of the surviving or resulting corporation; (b) other publicly traded or widely held shares; (c) cash in lieu of fractional shares of the corporations described in (a) and (b); or (d) any combination of (a), (b) and (c). The second exclusion is set out in paragraph (b)(3), which is not written as an explicit exception to the market out in (b)(1). Paragraph (b)(3) gives appraisal rights to shares that were surrendered as the result of a short form merger under § 253.

Klotz does not seek to bring his claim within one of the express exclusions to the market exception but focuses, instead, on § 262(b)(1)'s use of the record date and its related "meeting of stockholders" as conditioning the application of the market exception. Thus, he argues that the market exception applies only in the case of a merger approved at a meeting of the shareholders and, proceeding on that premise, advances the proposition that the market exception does not apply if the merger was approved by a method which does not involve the shareholder minority, i.e., through the use of written consents. On the effective date of the Time–Warner merger and at the time the Information Statement/Prospectus was mailed, the pertinent part of the appraisal statute read:

> (b) Appraisal rights shall be available for the shares ... of a constituent corporation in a merger ...:
>
> > (1) Provided, however, that no appraisal rights under this section shall be available for the shares of any class or series of stock which, *at the record date fixed to determine the stockholders entitled to receive notice of and to vote at the meeting of stockholders to act upon the agreement of merger or consolidation,* were either (i) listed on a national securities exchange or (ii) held of record by more than 2,000 stockholders....

8 *Del.C.* § 262(b) (1988) (emphasis added).[4] According to Klotz, this paragraph, which

defines the market exception, requires that a merger be approved at a meeting of the shareholders before the market exception applies. Stated differently, Klotz argues that an exception to the market out exists for mergers approved by written consent.

Klotz places particular emphasis on the language in paragraph (1), which sets a time to determine whether the shares qualify as widely held or publicly traded. He points out that other parts of § 262 specifically refer to approval by written consent as allowed by § 228. *See* 8 *Del.C.* § 262(a), (d). Since no mention is made of mergers taking place pursuant to written consent in (b)(1), he contends that the clear implication is that the market exception does not apply if a merger or consolidation is approved by written consent. In addition, Klotz maintains that the General Assembly could have extended the market exception to mergers by written consent in one of the amendments made since the market exception was first adopted in 1967.

Time–Warner counters that the plain language of the statute does not create another exception to the market out. In addition, the defendants argue that the lack of reference to a record date for approval by written consent does not rule out the availability of the market exception for mergers so approved. Finally, Time–Warner denies that the lack of appraisal is unfair since the plaintiff can sell his shares in the market.

## IV.

The parties' contentions clearly indicate that the pivotal issue in this case is whether 8 *Del.C.* § 262 grants appraisal for shares merged pursuant to written consent when the market exception would have otherwise denied appraisal rights. Our task in conducting a *de novo* review is to determine whether the Court of Chancery, in ruling for Time–Warner, correctly interpreted the statute to deny such rights in this case. Therefore, we now turn to the question of whether

---

**4.** Subsection (b) of § 262 was amended to account for depository receipts and to broaden the concept of "publicly traded."

§ 262 limits the market exception to mergers approved at a meeting of shareholders.

In our view, the interpretation advocated by Klotz, that the language of § 262(b)(1) implies a substantive restriction on the market exception, is erroneous. The General Assembly intended to include mergers made by written consent in the market out, but did not specify in paragraph (b)(1) a time for determining if firms merged in such a way are publicly traded or widely held. It is unnecessary to decide why the drafters did not specify the timing in paragraph (b)(1) itself in order to reject the proposition that the adverbial phrase in paragraph (b)(1) places a substantive restriction on the market exception. Several features of the statutory scheme suggest why no substantive restriction was intended.

First, as the Vice Chancellor correctly noted, because of the general applicability of § 228, the absence of specific language regarding written consent in § 262(b)(1) does not compel the conclusion that the market exception applies only to mergers approved at a meeting of shareholders. Section 228 allows approval by written consent for *any* action which is required to be taken at a meeting of shareholders. Thus, § 262(b)(1) need not separately mention written consent for § 228 to apply. The market exception embraces action by written consent even without explicit mention due to the broad language of § 228. The interaction of these sections within Title 8 refute Klotz's argument that the market exception applies only to mergers approved at a meeting of shareholders.

In addition, the structure of subsection (b) places the exceptions to the market out in separate paragraphs, (b)(2) and (b)(3). Had the drafters intended to provide an additional exception, they likely would have also included it in a separate paragraph. However, the exception proposed by Klotz is in the same sentence which defines the market out. Thus, his interpretation would position an exception to the market out inconsistently relative to the settled exceptions in § 262(b)(2) and (3). If the General Assembly had intended an additional exception to

§ 262(b)(1), it could have easily and explicitly so provided.

Furthermore, the phrase upon which Klotz relies merely adds *temporal* specificity. The phrase provides a point in time to determine if the shares were widely held or publicly traded. The grammatical structure of the statute prevents the phrase from providing a substantive restriction. *See* Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.01 (5th ed. 1992) (noting the relevance of the rules of grammar in statutory construction). The phrase relied upon by Klotz is adverbial, serving only to specify the time at which the conditions of the market out should be measured.

Finally, we are not persuaded by Klotz's argument equating short-form mergers under § 253 with mergers by written approval. The General Assembly provided in an additional paragraph that shareholders of a company that was merged pursuant to § 253 are entitled to appraisal. *8 Del.C.* § 262(b)(3). Despite other similarities between the short-form merger procedure and merger approval by written consent, the lack of such a paragraph granting appraisal in the latter circumstance is a crucial difference.

## V.

■ When interpreting an unambiguous statute such as this one, it is not necessary to search for its meaning externally. *See Spielberg v. State,* Del.Supr., 558 A.2d 291, 293 (1989). Nevertheless, an examination of commentaries written at the time the market exception and § 228 were added to Title 8 in 1967 lends further support to our conclusion regarding legislative intent. *See generally* S. Samuel Arsht, *A History of the Delaware Corporation Law,* 1 Del.J.Corp.L. 1, 13–17 (1976) (tracing the evolution of Delaware corporate law and the development of the 1967 revision in particular). Conspicuously absent from these sources is any suggestion that appraisal is available in the case of written consent despite the market exception. *See, e.g.,* S. Samuel Arsht & Walter K. Stapleton, *Analysis of the 1967 Delaware Corporation Law, in Corporation* (1967). In addition to silence on the part of those close to the drafting process, current treatises on Dela-

ware corporate law make no mention of the availability of appraisal despite the market exception in the case of written consent. *See, e.g.,* David A. Drexler et al., *Delaware Corporate Law and Practice* (1995). While not dispositive as to the meaning of a statute, in all likelihood these sources would have acknowledged the intent of the General Assembly to exclude mergers by written consent from the market exception if such intent could have been reasonably implied.

### VI.

Finally, although the plain meaning of the statute must prevail, we note that no policy objectives consistent with the appraisal statute are served by differentiating between written approval and approval at a meeting of the shareholders. Where the merger or consolidation may be accomplished by written consent, the rights of the minority are not materially enhanced if a shareholder meeting is held instead. For example, shareholders would not be deprived of potentially useful information. In both cases, similar disclosures would be required under § 14 of the Securities Exchange Act of 1934. 17 C.F.R. § 240.14c–2. Furthermore, the rationale of the market exception is to allow those shareholders who oppose a merger to sell into an active trading market.[5] *See* S. Samuel Arsht & Walter K. Stapleton, *Analysis of the 1967 Delaware General Corporation Law, in Corporation* 341 (1967); David A. Drexler et al., *Delaware Corporate Law and Practice* § 36.02 at 36–3 (1995). Approval by written consent would not affect such a trading market, and therefore, within the context of the market exception, no distinction should be made between written consent and approval at a shareholder meeting.

Read in accordance with its plain meaning, § 262 of the Delaware General Corporation Law does not extend appraisal rights if a merger was approved by written consents when the market exception would otherwise

apply. Such an exception for the use of written consents is neither supported by the language of the statute, nor consistent with the structure or purpose of the appraisal statute. The opinion of the Court of Chancery is therefore affirmed.

It is hard to see why ... shareholders who receive cash are worse off and more in need of appraisal than shareholders who receive stock of an acquiring or other corporation.

---

**5.** We make no attempt to reconcile the purpose of the market exception with the reinstatement of appraisal rights under § 262(b)(2). *See* Hideki Kanda & Saul Levmore, *The Appraisal Remedy and the Goals of Corporate Law,* 32 U.C.L.A.L.Rev 429, 434 (1985) (noting the inconsistencies in appraisal statutes):