**Marilyn S. QUINN and Alan R. Quinn, Plaintiffs,**

**v.**

**Lise Edelmann KEINICKE, Defendant.**

**C.A. No. 95C–10–095–WTQ.**

Superior Court of Delaware,
New Castle County.

Argued: Sept. 19, 1996.
Last Written Submission Received:
Nov. 4, 1996.
Decided: Dec. 3, 1996.

---

John M. Bader, Tomar, Simonoff, Adourian & O'Brien, Wilmington, for Plaintiffs.

Kenneth M. Doss, Casarino, Christman & Shalk, Wilmington, for Defendant.

QUILLEN, Judge.

The case comes before the Court on defendant's Motion to Dismiss for failure to effect service within 120 days of filing the complaint, as required by Superior Court Civil Rule 4(j). Interwoven with this Motion are two additional issues. The first is whether the defendant's attempted special appearance, a practice long-discarded in Delaware, constituted a general appearance. The second, an issue of first impression in this State, concerns the relationship between Delaware's statute for service of process on nonresident operators of motor vehicles, 10 *Del.C.* § 3112 ("motor vehicle long-arm statute"), and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, *reprinted in* 28 U.S.C.A. Rule 4 at 210 (West 1992) ("Hague Service Convention"). An outline of the factual and procedural history of this litigation may help clarify the legal issues.

## I.

An automobile driven by plaintiff Marilyn Quinn ("Quinn") collided with an automobile driven by defendant Lise Edelmann Keinicke ("Keinicke") on October 18, 1993 in New

Castle County, Delaware. On October 11, 1995, one week prior to the expiration of the statute of limitations for bringing this personal injury action, Quinn filed a complaint in arbitration against Keinicke for personal injuries she alleges she sustained as a result of the collision. Quinn's husband, Alan Quinn, also asserted a claim for loss of consortium. The complaint indicated that the case was a compulsory arbitration case under Superior Court Civil Rule 16.1 (damages $100,000 or less).

Keinicke is a resident of the Kingdom of Denmark. At the time of service of the summons and complaint, Keinicke apparently had returned to her country of residence. Quinn attempted to serve Keinicke pursuant to Delaware's statute for service of process on nonresident operators of motor vehicles, 10 *Del.C.* § 3112. Service was made upon Delaware's Secretary of State by the Sheriff of Kent County.[1] Pursuant to Section (b) of the motor vehicle long-arm statute, Quinn sent a copy of the service and pleadings via registered mail to Keinicke at her permanent address in Denmark.[2]

On November 2, 1995, 22 days after the filing of the complaint, Keinicke's counsel filed an entry of appearance. The entry of appearance reserved "all right to raise jurisdictional, or service, or statute of limitations defects which may be available," and particularly said that the entry "shall not be considered to be a waiver of any jurisdictional defects in service upon the Defendant." Two weeks later, on November 14, 1995, 34 days after the filing, defendant's counsel sent a letter to plaintiff's counsel in which he indicated that he would not be filing an answer until such time as plaintiff properly served defendant. Counsel did not at that time disclose the specific reason why he believed service was improper. On December 27, 1995, 78 days after the filing of the complaint, counsel for defendant sent another letter to plaintiff's counsel, this time specifying that he did not consider service to be valid because it was not made in conformity with the Hague Service Convention.

Plaintiff's counsel did not expressly dispute the applicability of the Hague Service Convention. Instead, counsel for plaintiff submitted interrogatories to defendant's counsel on January 11, 1996, 93 days after the filing of the complaint. The interrogatories requested the disclosure of the reasons why defendant's counsel believed, and the case law upon which defendant's counsel asserted, that valid service of process must take place through the Hague Service Convention. In a letter dated January 23, 1996, counsel for Keinicke refused to answer the interrogatories on the grounds that (1) they requested work product protected under the attorney-client privilege, (2) interrogatories may not be sought before a defendant has been served, and (3) discovery prior to arbitration is limited to determining the identity of an unknown defendant.

No further action was taken by plaintiff's counsel until he submitted a Motion for Default Judgment on March 22, 1996, in which Quinn stated that more than 20 days had elapsed since service of the complaint upon Keinicke.[3] (Docket No. 8). In opposing plaintiff's motion, Keinicke filed a Motion to Dismiss on the ground that service upon

---

1. The Court notes for the record that the author of this opinion was Secretary of State at the time of the service. But, since the mechanics of the nonresident service process are basically filing and do not personally involve the Secretary, the author does not find that his "impartiality might be reasonably questioned" because of his prior service as Secretary of State, a finding in which I understand both counsel concur. Compare a more questionable case, *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803).

2. Quinn's counsel received a return receipt on November 29, 1995, 49 days after the filing of the complaint. The following day, plaintiff's counsel filed an unnotarized affidavit of nonresidence with the Court. (Docket No. 4). Since the matter has not been raised and since plaintiff's counsel is a lawyer officer of the Court, the Court will treat this deficiency as harmless, provided plaintiff's counsel goes to the Prothonotary's office within a reasonable period of time and signs the affidavit a second time before a notary.

3. Apparently, plaintiff's counsel suggested to counsel for defendant that he file a Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(2) if he thought service of process was insufficient. There is no indication of when this suggestion was made, save that it was made prior to the filing of the Motion for Default Judgment.

defendant had not been made within the 120 days required by Superior Court Civil Rule 4(j). (Docket No. 10). On April 15, 1996, the Court heard both motions, denying the Motion for Default Judgment without prejudice, and reserving decision on the Motion to Dismiss. The Court expressly requested and received further briefing from both sides on the applicability of the Hague Service Convention, thus effectively expanding the scope of the Motion to Dismiss to cover insufficient service of process. Oral argument was held on September 19, 1996 and letter memoranda were received thereafter.

## II.

The first of the parties' contentions concerns whether Keinicke consented to the personal jurisdiction of the Superior Court by the filing of the entry of appearance of Keinicke's counsel on November 2, 1995. Superior Court Civil Rule 5(aa)(1) provides that "a defendant may appear although a summons has not been served upon the defendant." Rule 12(b) requires generally that defenses to a claim must be asserted in the responsive pleading, assuming one is required. It does, however, provide that any one of seven enumerated defenses may also be made by motion. Quinn argues that this entry of appearance, insofar as it is neither a motion to dismiss nor an answer raising a Rule 12(b) defense, constitutes a general appearance for purposes of conferring personal jurisdiction upon the Court. Quinn points out that defendant's counsel's entry of appearance states that the right to raise any jurisdictional defects is not waived. In plaintiff's mind, such language is essentially the same as attempting a "special appearance," designed to restrict the consequences of defendant's counsel's appearance in order to raise jurisdictional defects.

Prior to 1948, a defendant could enter one of two kinds of appearances, general or special. A general appearance constituted voluntary submission to the jurisdiction of the court. *Canaday v. Superior Ct.*, Del.Supr., 119 A.2d 347, 351 (1956). A special appearance, on the other hand, was used to attack sufficiency of process and constituted a challenge to jurisdiction over person or property.

*Id.* A defendant seeking to challenge the exercise of jurisdiction by the court had to seek the court's leave to make a special appearance. Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware*, §§ 227–228 (1906). Were that challenge successful, the action could be dismissed without the defendant ever having submitted to the court's jurisdiction. *Id.*

In 1948, however, the Civil Rules of the Superior Court underwent substantial modification along the lines of the Federal Rules of Civil Procedure. *See* Daniel L. Herrmann, *The New Rules of Procedure in Delaware*, 18 F.R.D. 327 (1955). One of the consequences of that modification was the creation of Rule 5(aa)(1) and Rule 12(b), the texts of which are substantially the same a half-century later. Put together, these rules had the effect of abolishing the distinction between general and special appearances, "thus dispensing with the necessity of raising some defenses by special appearance." *Canaday*, 119 A.2d at 353. One question, however, was left unanswered: whether a defendant remained able to raise jurisdictional questions without having to submit completely to the jurisdiction of the court. Eight years after the adoption of the new rules, the Delaware Supreme Court answered that question in the affirmative.

In *Canaday v. Superior Court*, Del.Supr., 119 A.2d 347 (1956), a defendant directed an entry of general appearance and filed an answer to a complaint. The answer addressed the merits of the complaint but also asserted two affirmative defenses attacking the sufficiency of the process of foreign attachment. The Court, noting that due process of law required the right to raise jurisdictional questions without requiring complete submission to jurisdiction, held that Rule 12(b) specifically preserved that right:

[I]t seems apparent that the result of Rule 12(b) is to consolidate in one procedural step the raising of questions which theretofore would have been raised at different stages of the proceeding by a variety of devices known to common law pleaders. This conclusion harmonizes with the theory

of Rule 12(b) which is that quick presentation of all defenses and objections should be encouraged, and successive procedural steps tending to do nothing but delay should be curtailed ... The modern motion to dismiss ... is no more a submission to personal jurisdiction than was the former special appearance.

*Id.* at 353–54.

■ The *Canaday* decision leaves no doubt that the special appearance no longer exists in Delaware. Today, the proper method for raising defects in jurisdiction is either to file a motion or to include the affirmative defense in the answer. On its face, defense counsel's entry of appearance looks suspiciously like an attempt at a special appearance, filed without leave of the Court. The Court is presented with two alternatives as to how to label it. First, it could be, as Quinn argues, a general appearance, in which case personal jurisdiction is admitted under Rule 5(aa)(1). Second, it could be treated as either a motion to dismiss or a responsive pleading, in which case personal jurisdiction is not admitted. The Court concludes that this entry of appearance, in fairness to the foreign individual defendant, ought to be treated as a motion. While certainly not in the correct form, it is substantively equivalent to the notice that a motion gives. The entry clearly notified plaintiff that Keinicke was not waiving her right to raise jurisdictional defects, not yet submitting to the personal jurisdiction of the Court.[4]

At oral argument, the Court asked defendant's counsel why he chose to file this appearance instead of a motion to dismiss within the customary 20 days after service. Counsel admitted in this case that he could have responded with a motion within the 20 day window, but stated that he did not because he wished to avoid arbitration, with which he did not wish to proceed while con-

testing jurisdiction. The Court is not persuaded by this argument. Surely some way could be found to seek a delay in the referral of a case to arbitration in order to permit the Court to decide a question of the propriety of an attempted service on a foreign defendant, whether it be an inherent power of the Court in some grand sense or an enlargement of time for the referral under Rule 6(b) in a narrow and technical sense. In any event, the Court holds in this case that the actual form of defense counsel's filed entry of appearance is the substantive equivalent of a motion to dismiss under Rule 12(b), rather than a general appearance under Rule 5(aa)(1), and consequently does not in and of itself confer personal jurisdiction over Keinicke.

### III.

In opposing Quinn's Motion for Default Judgment, Keinicke did include a Motion to Dismiss for failure to effect service "within 120 days," as required under Rule 4(j).

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Super.Ct.Civ.R. 4(j). Resolution of this question requires the Court to determine whether service was properly made.[5] Critical to that determination is an understanding of the relationship between Delaware's motor vehicle long-arm statute and the Hague Service Convention. This appears to be a matter of first impression in the courts of Delaware.[6] As a result, a discussion of the

---

4. The Court hopes this opinion will be read as giving notice of the appropriate procedure to be followed and not as precedent to justify the procedure followed in this case.

5. If service has not been properly made, this Court would have little difficulty concluding that the legal uncertainty surrounding the validity of service on the defendant would constitute "good

cause" and that corrected delayed service should be permitted.

6. Two federal district court cases in Delaware have implicitly recognized that the Hague Service Convention applies to service of persons abroad in cases arising under Delaware law, though not specifically dealing with the motor vehicle long-arm statute. *See Sears, Roebuck & Co. v. Sears, plc,* D.Del., 744 F.Supp. 1289

history and purpose behind each of law is appropriate.

Delaware's statute for service of process on nonresident operators of motor vehicles, 10 *Del.C.* § 3112, was first enacted into law on April 12, 1927. 35 *Del.Laws* ch. 225 (1927). The statute was a legislative response to the dilemma created by the common law rule that *in personam* jurisdiction was limited to those persons physically present within the jurisdictional boundaries of the State. *Swift v. Leasure,* Del.Super., 285 A.2d 428, 429 (1971). This common law rule became increasingly anachronistic with the increasing popularity of the automobile.

> The statute is the product of necessities caused by the conditions of modern travel between states. It is a recognition by the General Assembly of the ease with which a non-resident motorist may enter and leave Delaware, and the burden placed upon some one [sic] injured in Delaware as a result of the negligence of such a non-resident if the injured person for redress is required to follow the non-resident to his domicile in order to bring suit. The clear legislative intent was to provide a remedy for injuries caused by the negligent operation of a non-resident's vehicle.

*Kohanovich v. Youree,* Del.Supr., 147 A.2d 655, 657 (1959). Such nonresident motor vehicle statutes are in wide use, and their general validity was upheld against a due process challenge under the United States Constitution in *Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928) (applying Massachusetts' motor vehicle long-arm statute).

As codified, Delaware's statute essentially provides that, by virtue of using the privilege granted by the State to drive a motor vehicle on its roads, a nonresident owner, operator, or driver accedes to the appointment of Dela-

ware's Secretary of State as her agent for service of process in any civil action against that person arising out of any accident or collision within the State involving that motor vehicle. 10 *Del.C.* § 3112(a). The manner of effecting service is very specific.

> Service of the legal process provided for in this section with the fee of $2, shall be made upon the Secretary of State of this State in the same manner as is provided by law for service of writs of summons, and when so made shall be as effectual to all intents and purposes as if made personally upon the defendant within this State; provided, that not later than 7 days following the filing of the return of services of process in the court in which the civil action is commenced or following the filing with the court of the proof of the nonreceipt of notice provided for in subsection (e) of this section, the plaintiff or a person acting in his behalf shall send by registered mail to the nonresident defendant, or to his executor or administrator, a notice consisting of a copy of the process and complaint served upon the Secretary of State and the statement that service of the original of such process has been made upon the Secretary of State of this State, and that under the provisions of this section such service is as effectual to all intents and purposes as if it had been made upon such nonresident personally within this State.

10 *Del.C.* § 3112(b). As will be seen, it is the relationship between this language and the language of the Hague Service Convention that is of crucial importance to this decision.[7]

The Hague Service Convention was ratified on November 15, 1965 by the delegates of the 23 countries present at the Convention.[8] The Convention is a multilateral trea-

---

(1990); *Philipp Bros., Inc. v. M/V Merkur Bay,* D.Del., 110 F.R.D. 443 (1986). An unreported Superior Court opinion, *King v. Miyata Bicycle of America,* Del.Super., C.A. No. 91C–08–123, Taylor, J. (May 15, 1992), involves the Hague Service Convention and the Delaware statute on personal jurisdiction over nonresidents doing business within the State. 10 *Del.C.* § 3104.

**7.** As a matter of policy, it seems to the Court that the same considerations should govern regard-

less of whether the nonresident lives outside Delaware within or without the confines of the United States. The claimed injury to the plaintiff is the same and the alleged fault of the defendant is the same and the activity involves the peculiar hazard posed by the automobile coupled with today's legal requirements of liability insurance.

**8.** Both Denmark and the United States are signatories to the Convention. The United States Senate advised ratification to the President on April

ty designed to provide a simple way to serve process in a civil or commercial suit against a nonresident, usually a foreign national. It applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Art. 1. By its terms, it sought to ensure that parties residing in different participating nations would receive actual and timely notice of suit, so that they could respond in a proper fashion. The major innovation of the Convention is that it requires each member nation to establish a "central authority" to receive requests for service of documents from abroad. *Id.*, Art. 2. The central authority must then serve those documents in a method designated by the requesting party, if that method is compatible with the receiving nation's law, or by a method prescribed by the receiving nation's internal law. *Id.*, Art. 5. Once accomplished, the central authority must then return a certificate of service to the requesting party. *Id.*, Art. 6.

In addition to submitting requests to the central authority, a nation may consent to other methods of service within its boundaries. It may allow service directly through its diplomatic or consular agents. *Id.*, Art. 8. It may allow service by transmitting documents through its consular channels to the authorities of the receiving nation designated by that nation to receive service. *Id.*, Art. 9. Two or more member nations may make a bilateral agreement to permit channels not provided for in the Convention. *Id.*, Art. 11. Finally, and most significant for purposes of this decision, Article 10 of the Hague Service Convention states the following:

> Provided the State of destination does not object, the present Convention shall not interfere with—
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial

documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination.

## IV.

█ The foregoing discussion results in two issues. First, whether the Hague Service Convention applies in this case. Second, assuming it applies, whether Quinn's mailing was a valid method under the Convention.[9] The first issue is answered in the affirmative. As noted, Article 1 applies whenever there is occasion to transmit service documents outside this country. This begs the question of how does one know when there is occasion to transmit service documents abroad. In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, the United States Supreme Court, applying Illinois' general long-arm statute, held that whether there is occasion to transmit documents abroad must be determined by reference to the forum state's law. 486 U.S. 694, 700–01, 108 S.Ct. 2104, 2108–09, 100 L.Ed.2d 722 (1988). "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Id.* at 700, 108 S.Ct. at 2108.

In the *Volkswagenwerk* case, Schlunk filed a wrongful death action in Illinois state court after his parents were killed in an automobile accident. He alleged that defects in their Volkswagen automobile contributed to their deaths. Schlunk initially filed suit against Volkswagen of America, Inc., as a wholly-owned domestic subsidiary of the defendant, but later amended his complaint to add the defendant. He attempted to serve the amended complaint on the defendant by serving the domestic subsidiary as the defendant's involuntary agent, but the defendant

14, 1967, who then ratified the Convention on April 24, 1967. It became effective as to the United States on February 10, 1969.

9. Keinicke does not suggest that Quinn failed to comply with Delaware's motor vehicle long-arm statute. Compliance therewith will not be further discussed.

moved to quash the service on the grounds that it could be served only pursuant to the Hague Service Convention.

Ruling against the defendant, the U.S. Supreme Court held that "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications." *Id.* at 707, 108 S.Ct. at 2112. The service satisfied Illinois' long-arm statute, then codified at Ill.Rev.Stat. ch. 110, para. 2–209,[10] because the statute stated that personal service upon an agent is equivalent to personal service upon the principal. *Id.* at 706, 108 S.Ct. at 2111–12. The service satisfied the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the Court was satisfied that notice was virtually guaranteed to reach the parent corporation. *Id.* at 706–07, 108 S.Ct. at 2111–12. The statute itself did not require the transmittal of documents to Germany as a condition of proper service. *Id.* at 706, 108 S.Ct. at 2111–12.

The facts of this case are easily distinguishable from those in *Volkswagenwerk.* Service upon the domestic agent alone, Delaware's Secretary of State, without sending notice to the nonresident defendant by registered mail, is not valid or complete under ·either 10 *Del.C.* § 3112 or the Due Process Clause of the Fourteenth Amendment. As noted, service pursuant to the motor vehicle long-arm statute begins with formal service upon the Secretary of State. 10 *Del.C.* § 3112(b). Service upon the Secretary is as good as personal service upon the defendant in-state "provided" the plaintiff "shall send" by registered mail copies of the required documents and notice that they have been served upon the Secretary of State. *Id.* It is clear that the statute creates a conditional approval of sorts, that service upon the Secretary is effectual if, and only if, the plaintiff makes the required mailing to the defendant.

Nor would service upon the Secretary of State alone, without the subsequent mailing,

satisfy due process. Due process requires that the defendant receive "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Volkswagenwerk,* 486 U.S. at 706, 108 S.Ct. at 2111 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). It is obvious that merely serving the Secretary of State, without the necessary mailing to the nonresident defendant, will not apprise the defendant of the pendency of the action. *See Sommers v. Gaston,* Del.Super., 295 A.2d 578, 580 (1972) (holding that mailed notice is required under the due process clauses of the United States and Delaware Constitutions).

Unlike *Volkswagenwerk,* there are no grounds upon which the Court can be certain that notice will reach the defendant absent the mailing. The two-step process of *service* upon the Secretary of State, with copies *sent* to the defendant via registered mail, is the only method countenanced by 10 *Del.C.* § 3112. Service upon the Secretary of State alone is not complete compliance under either Delaware's motor vehicle long-arm statute or the federal Due Process Clause. The Hague Service Convention applies. *See generally Curcuruto v. Cheshire,* S.D.Ga., 864 F.Supp. 1410, 1412 (1994) (applying the Hague Service Convention to Georgia's motor vehicle long-arm statute).

## V.

Having determined that the Hague Service Convention applies, the remaining issue is to determine whether Quinn's method of service is valid under the Convention. Quinn did not send the request for service to Denmark's Ministry of Justice, its designated Central Authority for the receipt of such requests. Article 2 consequently does not apply. Nor did Quinn make use of any of the methods listed in Article 8, 9, 11, or 19.[11] Further-

10. *See Volkswagenwerk,* 486 U.S. at 706, 108 S.Ct. at 2111–12. The statute is now codified at Ill.Ann.Stat. ch. 735, para. 5/2–209 (Smith–Hurd 1992).

11. Neither Quinn nor Keinicke offered any evidence suggesting that the United States and Denmark have agreed to alternative channels of transmission. Nor has either party offered any evidence suggesting that the law of Denmark permits documents coming from abroad to be

more, of the three methods described in Article 10, service was not made in the manner described in Subsection (b), and Denmark has opted out of Subsection (c). *See* Hague Service Convention, *reprinted in* 28 U.S.C.A. Rule 4 at 220 n. 6 (West 1992). Validity of service, therefore, must turn upon the only remaining option, Subsection (a) of Article 10. Neither party disputes this.

As noted, Subsection (a) of Article 10 provides that the Convention is not meant to prohibit "the freedom to send judicial documents, by postal channels, directly to persons abroad." [12] *Id.*, Art. 10(a). There is a split of authority among the courts addressing the meaning of this Subsection. One line of authority holds that use of the word "send" does encompass service, and consequently permits service abroad to be made by mailing. The second line of authority takes the contrary position and holds that use of the word "send," compared against several references elsewhere in the Convention to "service," cannot be understood to include "service." Not surprisingly, Quinn and Keinicke plant themselves squarely on opposite sides of this split. The Court, however, does not believe that the parties or the authorities cited considered a crucial threshold question. It seems to this Court that there is a threshold question of whether 10 *Del.C.* § 3112 requires that the nonresident defendant actually be served, or whether it simply requires the sending of documents to the nonresident defendant via registered mail in conjunction with service which has already taken place upon the Secretary of State. [13]

■ The express language of Article 10(a), to which Denmark did not object, permits the "sending" of "judicial documents." If 10 *Del.C.* § 3112(b) only requires that such documents be sent to, rather than served upon, the nonresident defendant, Article 10(a)'s express language, construed limitedly, is satisfied and the matter is ended, for neither party disputes that Quinn sent copies of the necessary documents to Keinicke via registered mail. If, however, 10 *Del.C.* § 3112(b) requires that the nonresident defendant be served, the Court must then address the issue briefed by both parties: whether Article 10(a) permits service abroad by mailing. For the reasons that follow, the Court finds that 10 *Del.C.* § 3112 only requires that the documents be sent to, not served upon, a nonresident defendant. Consequently, Quinn properly served Keinicke under both Delaware law and the Hague Service Convention, and the question of whether Article 10(a) allows service by mail is not a necessary part of this opinion.

The language of Subsection (b) of the motor vehicle long-arm statute states that *"[s]ervice* of the legal process provided for in this section ... shall be made upon the Secretary of State." 10 *Del.C.* § 3112(b) (emphasis added). Such service "when so made shall be effectual to all intents and purposes as if made personally upon the defendant within this State." *Id.* However, the proviso clause in the statute also requires the plaintiff to *"send* by registered mail [to the nonresident defendant] ... a notice consisting of a copy of the process and complaint ... and the statement that service of the original of such process has been made upon the Secretary of State." *Id.* (emphasis added). Based on a literal reading of this text, the only party being served is the Secretary of State. All that the nonresident defendant receives is a *copy* of the same documents

---

mailed for service within its territory. The Court has not found any such evidence. Based on an examination of the resources available to the Court, the Court finds that Articles 11 and 19 do not apply. However, the Court has not been able to verify directly any statutes or regulations of Denmark and has instead had to rely upon secondary sources in its search.

**12.** As with the other subsections of Article 10, the receiving state may specifically object to this Subsection. Denmark has not so objected.

**13.** The Court has found only one decision thus far that examines the relationship between Article 10(a) of the Hague Service Convention and a state's statute for service of process on nonresident operators of motor vehicles. *See Curcuruto v. Cheshire*, S.D.Ga., 864 F.Supp. 1410 (1994) (applying Georgia's motor vehicle long-arm statute). The *Curcuruto* Court, unfortunately, did not address the issue discussed here in Section V of this opinion. The Court apparently assumed that the statute required "service" upon the nonresident defendant and went immediately to a discussion of the material addressed in Section VI of this opinion.

with notice that service *has been made.* The registered mailing is simply the notice that the nonresident defendant must receive under the Due Process Clauses of the state and federal constitutions. *Sommers v. Gaston,* Del.Super., 295 A.2d 578, 580–81 (1972). It does not constitute service. The Delaware Secretary of State, not the nonresident defendant, is "served" under 10 *Del.C.* § 3112.

Since the motor vehicle long-arm statute requires service upon Keinicke's agent and only notice to Keinicke, Quinn will be deemed to have complied with both the long-arm statute and the Hague Service Convention so long as she did *send* the required documents via registered mail. Keinicke does not dispute that Quinn sent the documents to her via registered mail or that she received the documents, although there may be some question as to who actually signed for them. These documents were "sent" within the meaning of Delaware's motor vehicle long-arm statute and Article 10(a) of the Hague Service Convention. Quinn has complied with both laws, and service of process was validly made.

In light of the lack of any reinforcing judicial precedent, the Court has considered whether the surprising simplicity of this textual holding masks a greater complexity in the situation at bar and has concluded that it does not. There is also no apparent policy reason why a foreign resident should be given special favor as opposed to a non–Delaware United States resident. Nor do traditional personal jurisdictional concepts prevent the statutory designation of a public agent when a foreign national engages in the inherently risky activity of driving a motor vehicle in Delaware.

Nor does this holding affect the applicability of the Convention, as discussed above in Part IV. In *Volkswagenwerk,* the United States Supreme Court held that the Convention applies whenever the forum state's method of serving process "requir[es] the transmittal of documents abroad." 486 U.S. at 700, 108 S.Ct. at 2108. The motor vehicle long-arm statute clearly requires the "transmittal," via registered mail, of documents abroad in connection with service. Whether the documents are "served" or "sent" as

understood by whichever interpretation of Article 10(a) one chooses, they are without a doubt being transmitted as the *Volkswagenwerk* Court used the term.

## VI.

■ Although this Court holds that copies of service documents mailed to a nonresident defendant pursuant to 10 *Del.C.* § 3112 complies with Article 10(a) of the Hague Service Convention because § 3112(b) only requires that such documents be "sent," this Court is also inclined to the view, in the admittedly more difficult question of construction, that the end result would be the same even if the registered mailing constituted actual service upon a nonresident defendant. Service in this situation would seem valid under Article 10(a) of the Convention because it encompasses "service" within the meaning of the term "send." In short, "send" should be construed broadly to include "service," rather than construed narrowly to distinguish "service."

The term "send" occurs only in Article 10(a). Every other provision in the Convention speaks of "to effect service." Keinicke argues, with some strength, that, under the commonly-accepted canons of statutory construction, the plain language of a statute or other piece of legislation controls. "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *See also Delaware Steeplechase & Race Ass'n v. Wise,* Del.Supr., 27 A.2d 357, 361 (1942); NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01 (5th ed. 1991). When the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). *See also Dowling v. Board of Professional Counselors of Mental Health,* Del.Su-

per., C.A. No. 96A–02–13–RRC, Cooch, J., 1996 WL 527212 (Aug. 13, 1996) (MEMO-RANDUM) at 8; SINGER, SUTHERLAND STATU-TORY CONSTRUCTION §§ 47.23–47.25.

Based on these principles of statutory construction, Keinicke argues, the drafters of the Hague Service Convention would have used the word "service" in Article 10(a) if they meant it, and that to permit direct mail service by Article 10(a) would contradict the contextual meaning of the word "send." *See Raffa v. Nissan Motor Co.*, E.D.Pa., 141 F.R.D. 45, 46 (1991); *Mommsen v. Toro Co.*, S.D.Iowa, 108 F.R.D. 444, 446 (1985); *Suzuki Motor Co. v. Superior Ct.*, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988); *King v. Miyata Bicycle of America, Inc.*, Del.Super., C.A. No. 91C–08–123, Taylor, J. (May 15, 1992) (OPINION) (citing the *Suzuki* decision). As one court argued, "paragraph (a) of Article 10 only provides for the service of *subsequent* papers after service of process has been effectuated by other means, and does not provide an independent method for

the service of process." *Gallagher v. Mazda Motor of America, Inc.*, E.D.Pa., 781 F.Supp. 1079, 1082 (1992). *See also Bankston v. Toyota Motor Co.*, 8th Cir., 889 F.2d 172, 173–74 (1989).

This rejection of service by mail under Article 10(a) finds support in several jurisdictions.[14] Yet the Court's examination of the authorities espousing both positions leads it to tentatively conclude that the more persuasive authority lies with those courts which find that service of process may be made by mail.[15]

■ It is true that the canon of statutory construction embraced by Judge Taylor in the Delaware *King* case and by the other courts cited in note 14 is one of considerable force, yet "for every canon of statutory construction there is another which may yield the opposite outcome.... In the final analysis, rules of constructions are aids...." *Keeler v. Harford Mut. Ins. Co.*, Del.Supr., 672 A.2d 1012, 1015 (1996).[16] There is a

**14.** *See, e.g., Bankston*, 8th Cir., 889 F.2d 172 (1989); *Gallagher v. Mazda Motor of America, Inc.*, E.D.Pa., 781 F.Supp. 1079 (1992); *Raffa v. Nissan Motor Corp.*, E.D.Pa., 141 F.R.D. 45 (1991); *Wilson v. Honda Motor Co.*, E.D.Tenn., 776 F.Supp. 339 (1991); *Fleming v. Yamaha Motor Corp, U.S.A.*, W.D.Va., 774 F.Supp. 992 (1991); *Soupart v. Houei Kogyo Co.*, W.D.Pa., 770 F.Supp. 282 (1991); *Wasden v. Yamaha Motor Co.*, M.D.Fla., 131 F.R.D. 206 (1990); *McClenon v. Nissan Motor Corp.*, N.D.Fla., 726 F.Supp. 822, 826 (1989); *Hantover, Inc. v. Omet, SNC of Volentieri*, W.D.Mo., 688 F.Supp. 1377 (1988); *Prost v. Honda Motor Co.*, E.D.Mo., 122 F.R.D. 215 (1987); *Cooper v. Makita, U.S.A., Inc.*, D.Me., 117 F.R.D. 16 (1987); *Pochop v. Toyota Motor Co.*, S.D.Miss., 111 F.R.D. 464 (1986); *Mommsen v. Toro Co.*, S.D.Iowa, 108 F.R.D. 444 (1985); *Frankenmuth Mut. Ins. Co. v. ACO, Inc.*, 193 Mich.App. 389, 484 N.W.2d 718 (1992); *Suzuki Motor Co. v. Superior Ct.*, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988); *Ordmandy v. Lynn*, N.Y.Sup.Ct., 122 Misc.2d 954, 472 N.Y.S.2d 274 (1984). *See also* Annotation, *Service of Process by Mail in International Litigation as Permissible Under the Hague Service Convention*, 112 A.L.R.Fed. 24 §§ 3[a], 5[a] (1993).

**15.** *See, e.g., Ackermann v. Levine*, 2d Cir., 788 F.2d 830 (1986); *R. Griggs Group Ltd. v. Filanto Spa*, D.Nev., 920 F.Supp. 1100 (1996); *Curcuruto v. Cheshire*, S.D.Ga., 864 F.Supp. 1410 (1994); *Pittsburgh Nat'l Bank v. Kassir*, W.D.Pa., 153 F.R.D. 580 (1994); *Patty v. Toyota Motor Corp.*, N.D.Ga., 777 F.Supp. 956 (1991); *Hutchins v. Beneteau Ltd.*, E.D.La., 1990 WL 17533, 1990

U.S.Dist. LEXIS 1725 (Feb. 13, 1990); *Coblentz GMC/Freightliner, Inc. v. GMC*, M.D.Ala., 724 F.Supp. 1364 (1989), *aff'd without op., Coblentz GMC v. GMC Truck Operation*, 11th Cir., 932 F.2d 978 (1991); *Meyers v. ASICS Corp.*, C.D.Cal., 711 F.Supp. 1001 (1989); *Smith v. Dainichi Kinzoku Kogyo Co.*, W.D.Tex., 680 F.Supp. 847 (1988); *Newport Components, Inc. v. NEC Home Elec., Inc.*, C.D.Cal., 671 F.Supp. 1525 (1987); *Lemme v. Wine of Japan Import, Inc.*, E.D.N.Y., 631 F.Supp. 456 (1986); *Weight v. Kawasaki Heavy Indus., Ltd.*, E.D.Va., 597 F.Supp. 1082 (1984), *later proceeding*, 604 F.Supp. 968 (1985); *Chrysler Corp. v. General Motors Corp.*, D.D.C., 589 F.Supp. 1182 (1984); *Tamari v. Bache & Co.*, N.D.Ill., 431 F.Supp. 1226 (1977); *Gapanovich v. Komori Corp.*, Ct. App.Div., 255 N.J.Super. 607, 605 A.2d 1120 (1992); *Hayes v. Evergo Telephone Co.*, 100 N.C.App. 474, 397 S.E.2d 325 (1990); *Nicholson v. Yamaha Motor Co.*, 80 Md.App. 695, 566 A.2d 135 (1989), *cert. denied*, 318 Md. 683, 569 A.2d 1242 (1990); *Sandoval v. Honda Motor Co.*, 364 Pa.Super. 136, 527 A.2d 564 (1987). *See also* Annotation, *Service of Process by Mail in International Litigation as Permissible Under the Hague Service Convention*, 112 A.L.R.Fed. 24 §§ 3[b], 5[b] (1993).

**16.** It is necessary to directly consider the Delaware case, *King v. Miyata Bicycle of America, Inc., supra*, a decision of Judge Taylor in this Court. The author of this opinion parts with Judge Taylor and his reliance on *Suzuki*. But I note that Judge Taylor himself was very guarded

canon of construction which states that a court should give effect to persuasive evidence that even the plain meaning of the word used was not the meaning intended by its creators. In an extreme case, Courts may look beyond the literal wording of a statute or treaty if the plain meaning of those words is at variance with the policy of the statute or treaty, or if there is a "clearly expressed legislative intention to the contrary" of the language. *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982). *See also* SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01. and, with the word "send" in Article 10(a), we are not talking about plain meaning; rather, under either view, one must engage in statutory construction of the term "send." There is evidence of intention which indicates "send" includes "service."

■ First, as a negation, there is substantial evidence that the use of the word "send" without including the word "service" is attributable more to oversight than to

deliberate design. *Ackermann v. Levine*, 2d Cir., 788 F.2d 830, 840 (1986) (*citing* 1 BRUNO RISTAU, INTERNATIONAL JUDICIAL ASSISTANCE (CIVIL AND COMMERCIAL) § 4–28 AT 165–67 (1984) (reviewing the Convention Reporter's report on the final text in reaching this conclusion)). The Court "must ascertain and give effect to the intention of the [signatory nations] as expressed in the [Convention] itself." *Klotz v. Warner Communications, Inc.*, Del.Supr., 674 A.2d 878, 879 (1995) (replacing "Legislature" and "Statute" in block parentheses). "Every part of a statute must be construed in connection with every other part so as to produce a harmonious whole." *Lewis v. Anderson*, Del.Supr., 477 A.2d 1040, 1048 at n. 16 (1984). The entire purpose of the Convention is to effect service of process abroad in an easier fashion. *See* Hague Service Convention, Preamble. *See also Gapanovich v. Komori Corp.*, Ct.App.Div., 255 N.J.Super. 607, 605 A.2d 1120, 1123 (1992). To hold that Article 10(a) encompasses only the sending of judicial documents other than service of process would fail to give effect to

in his writing. While Judge Taylor appears to side with the rejection of service by mail under Article 10(a) authority, his opinion also suggested a different result if it could be shown that Japan, the receiving country in that case, utilized or accepted service by mail. *King* at 5. Judge Taylor focused on the prefatory language in Article 10(a):

> Provided the State of destination does not object, the present Convention shall not interfere.... This language that the Convention does not "interfere with" seems to indicate not that category (a) is a means of service authorized by the Convention, but that if the sending of documents is authorized by virtue of some existing authority or accepted practice other than the Convention, then the method described in the category can be utilized without interference from the Convention.

(Emphasis added). Finding no precedent as to whether Japan utilized or accepted service of process by mail, Judge Taylor adopted the reasoning of the *Suzuki* case and rejected the service. Judge Taylor was not satisfied by the mere fact that Japan had not objected to the utilization of Article 10(a), citing Report: *Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention*, 28 Int'l Mat. 1558, 1561 (1989) for the proposition that Japan's failure to object to Article 10(a) "does not necessarily imply" the method is considered "valid service" but "merely indicates" Article 10(a) is not an "infringement of its sovereign power." It should be noted that Judge Taylor's approach emphasizing "the prefatory language of Article 10," contrary to his alternate *Suzuki* reliance, assumes that Article 10(a) allows service of process by mail but adds another condition. My own educated guess is that Denmark would satisfy the condition. First, Denmark just as Japan, has not objected to the utilization of Article 10(a). Second, Denmark under Article 15 of the Convention availed itself of the power in the second paragraph to enter default judgments without proof of service if, among other things, "[a writ of summons or an equivalent document] was transmitted by one of the methods provided for in this Convention." This provision would seem to include Article 10(a) and would suggest that Article 10(a), under the Danish interpretation, is seen to include service of process. Third, with the help of the University of Minnesota Law Library, for which gratitude is hereby expressed, a secondary text has indicated that in Denmark, "[s]ervice by post can, at the request of the plaintiff be carried out by the court, but this method of service is rarely used." O'Malley and Layton, *European Civil Practice* (1989), § 49.38, p. 1222. At the least, it appears that service by mail is not foreign to internal practice in Denmark.

The position taken by Judge Taylor with regard to "the prefatory language" robs the Convention of uniformity and creates uncertainty, amply illustrated by this Court trying to figure out the law of Denmark with regard to service by mail. It would seem better to adopt one of two interpretations of subsection (a) of Article 10 developed by the two lines of authority noted in notes 14 and 15.

the clearly-expressed intent of the Convention and render Article 10(a) inconsistent with the purpose of the treaty.[17]

Second, several of the contracting states, including Canada, the Czech Republic, Pakistan, and the Slovak Republic, allow service through postal channels *pursuant* to Article 10(a). *See* Hague Service Convention, *reprinted in* 28 U.S.C.A. Rule 4 at 219–21 nn. 3, 3c, 11a, 11d (West 1992) (stating, for example that "Canada does not object to service by postal channels"). Nor do the ratifying documents submitted by other contracting states indicate that any country is under the belief that Article 10(a) provides otherwise. The United States Department of State apparently also operates under the assumption that Article 10(a) permits service abroad by mail. *See* Letter from Alan J. Kreczko, U.S. Department of State Deputy Legal Advisor, to the Administrative Office of United States Courts and the National Center for State Courts (March 14, 1991), excerpted in *R. Griggs Group Ltd. v. Filanto Spa*, D.Nev., 920 F.Supp. 1100, 1106 (1996).

Third, an apparent majority of scholarly authority in this field believes that Article 10(a) permits service by mail. Most significantly, the Chairman of the Advisory Committee and the United States delegate to the Convention himself states that Article 10(a) "permits direct service by mail." Philip W. Amram, *The Proposed International Convention on the Service of Documents Abroad*, 51 A.B.A.J. 650, 651 (1965). *See also* PRACTICAL HANDBOOK ON THE OPERATION OF THE HAGUE CONVENTION OF 15 NOVEMBER 1965 ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS (2d ed. 1992) at 42–45; Hans Smit, *Recent Developments in International Litigation*, 35 S.Tex.L.Rev. 215, 220–21 (1994); Patricia N. McCausland, Note and Comment, *How May I Serve You? Service of Process by Mail Under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 12 Pace L.Rev. 177, 189–97 (1992); Franklin B. Mann, Jr., Comment, *Foreign Service of Process by Direct Mail Under the Hague Convention and the Article 10(a) Controversy: Send v. Service*, 21 Cumb. L.Rev. 647, 661–62 (1991); BRUNO RISTAU, INTERNATIONAL JUDICIAL ASSISTANCE (CIVIL AND COMMERCIAL) § 4–28 (1990 revision); Committee on Federal Courts of the New York State Bar Association, *Service Abroad: A Nuts and Bolts Guide*, 122 F.R.D. 63, 79 (1989); Joseph F. Weis, Jr., *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity*, 50 U.Pitt.L.Rev. 903, 908 (1989).[18]

The Court is also unpersuaded by the additional arguments that Article 10(a) does not permit service by mail. One argument posits that nations which have objected to the more rigorous methods of service in paragraphs (b) and (c) of Article 10 would never consent to the far more liberal method of service by mail in Article 10(a) and therefore Article 10(a) must be construed to exclude service. *See Suzuki Motor Co.*, 249 Cal.Rptr. at 380.[19] This argument is not facially unpersuasive. But Subsection (a) can be read to permit service by mail *in addition to* the sending of other judicial documents through postal channels and surely this possibility does not escape those responsible in a given country for the opt-out decision. Article 21 of the Convention requires that each contracting state officially notify the Ministry of Foreign Affairs of the Netherlands if it objects to the use of "methods of transmission" in Article 10. *See* Hague Service Convention, Art. 21. Denmark objected in this manner to Article 10(c) but not Article 10(a). With an explicit method for objecting specifically laid out in the Convention, it can only be assumed that a

---

**17.** Plaintiff suggests that "send" is the more appropriate, though perhaps not ideal, word to use when dealing with the usage of postal channels, while "service" is the more appropriate term for the methods described in subparagraphs (b) and (c) of Article 10.

**18.** Judge Weis credited Philip Amram with making valuable editorial suggestions. Judge Weis' article specifically makes reference to Article 10(a) permitting service by mail. One might speculate that if Mr. Amram had since changed his mind, he would have notified Judge Weis.

**19.** In the *Suzuki Motor Co.* decision, the Court pointed out that it would illogical to think that Japan, which did not permit service by mail internally, would permit it externally. 249 Cal. Rptr. at 380.

nation which fails to object in that manner does not, in fact, object. *See R. Griggs Group Ltd.*, 920 F.Supp. at 1105. Returning to that familiar canon of statutory construction, if a governing body has the opportunity to veto three provisions and explicitly vetoes two of them, it should be presumed that the governing body acted intentionally and deliberately in not vetoing the third provision. *See Russello*, 464 U.S. at 23, 104 S.Ct. at 300–01; *Dowling v. Board of Professional Counselors of Mental Health*, C.A. No. 96A–02–13–RRC at 8; SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.23. If Denmark is uncomfortable with Article 10(a), it should have objected to it, much as it objected to subparagraph (c). *See Gapanovich*, 605 A.2d at 1124 (applying similar logic to Japan's opting out of subparagraphs (b) and (c)).

Second, the Court also finds unconvincing the argument that "the Convention laboriously developed a complex system for service of process, yet if service of process could be accomplished simply 'by sending something through the mail, the vast bulk of the Convention would be useless.'" *Mommsen*, 108 F.R.D. at 446 (citing *McClenon v. Nissan Motor Corp.*, N.D.Fla., 726 F.Supp. 822, 826 (1989) (internal citation omitted)). *See also Suzuki Motor Co.*, 249 Cal.Rptr. at 381 (citing the same language as *McClenon*); *King*, C.A. No. 91C–08–123 at 5 (citing the *Suzuki* decision). *See generally Borschow Hosp. & Med. Supplies, Inc. v. Burdick–Siemens Corp.*, D.P.R., 143 F.R.D. 472, 478 (1992) (holding that the Convention favors service through the Central Authority of each country). This construction misses the point of the Convention. The Preamble to the Convention states that the contracting states were "[d]esiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time."[20] The Preamble makes reference to

"simplifying" and "expediting," not complicating and hindering. Allowing service by mail under Article 10(a) comports with the liberal approach intended by the signatory nations, *Gapanovich*, 605 A.2d at 1123, and advances the general rule that treaties should be construed broadly. *Volkswagenwerk*, 486 U.S. at 700, 108 S.Ct. at 2108. *See also* SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 32.09.

Finally, the delegates to the Convention were not attempting to force parties to use the more complex, expensive, and time-consuming methods. Rather, they were attempting to lay a basic framework to which all countries could agree and upon which a litigant could always fall back, while not preventing ratifying countries from permitting, or litigants from using, less complex and less bureaucratic methods.[21] The signatory nations could decide to avoid the more complex and opt for the more simple, or *vice versa.*

Accordingly, even if 10 *Del.C.* § 3112 requires direct service upon a nonresident defendant, rather than simply notice via a registered mailing, it would seem such service upon Keinicke was made pursuant to Article 10(a) of the Hague Service Convention. This Court would be inclined to hold that Article 10(a) of the Hague Service Convention permits service of process to be made by mail, provided that the receiving state has not objected under Article 21. But the question is close and, given the decisive, albeit unique, holding in Section V of this opinion, the Court refrains from a direct alternative holding and specifically labels the discussion in this Section VI dictum.

## VII.

Since effective service was made, defendant's Motion to Dismiss for failure to effect service "within 120 days," as expanded by

---

**20.** "[P]reliminary statements, such as the preamble, can often aid in statutory construction." *State v. Lillard*, Del.Supr., 531 A.2d 613, 617 (1987).

**21.** Most of the authorities addressing Article 10(a) neglect the broad expansion clause of Article 11. Article 11 explicitly permits contracting states to make "side agreements" that permit methods of transmission not otherwise provided for in the Convention. Even were Article 10(a) not to permit service by mail, Article 11 conceivably could be used to accomplish the same purpose, yet the same objection voiced by the *Mommsen* and *McClenon* Courts, that service by mail circumvents the complexity of the Convention, would apply.

the briefing, must be DENIED. The Court has already liberally treated defense counsel's entry of appearance as a Motion to Dismiss on a jurisdictional matter. Since that "Motion" was filed prior to the Motion for Default, there appears to be no reason to revisit the prior denial of Quinn's Motion for Default Judgment.

For all of the foregoing reasons, defendant's Motion to Dismiss is hereby DENIED. IT IS SO ORDERED. An answer to the complaint should be filed within 10 days of the date of this opinion.