**Carole A. CHAMBERS, Plaintiff,**

v.

**Richard L. KANE, Individually and as Trustee, Defendant.**

Court of Chancery of Delaware,
New Castle County.

Submitted Oct. 17, 1980.

Decided Dec. 1, 1980.

Richard R. Wier, Jr., and Walter P. McEvilly, Jr., of Prickett, Jones, Elliott & Kristol, Wilmington, for plaintiff.

H. Albert Young, Bruce M. Stargatt, and Richard H. Morse, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

BROWN, Vice Chancellor.

In this action the plaintiff, Carole A. Chambers, has brought suit against her brother, Richard L. Kane, both individually and as successor trustee of a residuary trust created under the Will of the parties' deceased father.

The complaint is brought in two counts. Under the first, plaintiff charges misconduct by her brother in his capacity as trustee, and, as an ultimate beneficiary of the trust principal along with her brother, plaintiff seeks his removal as trustee, an accounting of his activities and a surcharge against him for his alleged improprieties.

Under the second count, plaintiff purports to assert a personal claim against her brother individually for interference with her prospective right to inherit from their mother. As to this claim, plaintiff seeks an accounting, a surcharge against the defendant for loss and diminishment of their mother's assets which plaintiff alleges have been brought about by the improper conduct of her brother, the imposition of a constructive trust as to all assets of their mother held or administered by him, and an injunction prohibiting the defendant from any further dealing in the assets of their mother.

The defendant has moved to dismiss this second count for failure to state a claim. In addition, he has moved to strike Paragraphs 4 and 8(e)(5) of the complaint on the grounds that they allege nothing that is material to the first count.

The complaint alleges that John W. Kane, the father of the parties, died in 1965. Under his Will he created two trusts. One was a marital trust for the benefit of his widow, Sally H. Kane. The other was a residual trust. The income from both trusts goes to

Sally H. Kane for life. Upon her death, the residual trust is to be divided between the plaintiff, the defendant, and any grandchildren of John W. Kane. Principal from the marital trust can be invaded for the benefit of Sally Kane during her lifetime, and she is given the power by her Will to appoint any remaining principal of the marital trust. The challenged Paragraph 4 alleges that in 1978 Sally Kane executed a Will by means of which she created a trust of her residual estate. By such Will she has purported to exercise her power of appointment under the marital trust of her husband in favor of the plaintiff and defendant as equal income beneficiaries of her residual trust, with power to appoint their respective shares of the trust principal.

In the second count of the complaint, plaintiff alleges that Sally Kane is 75 years of age, is in poor health, and is unable to manage her assets or to independently evaluate the conduct of the defendant. It is alleged that since 1971 Sally Kane has relied upon and been dependent upon the defendant for advice and assistance in the management of all her assets, including the assets of the marital trust. It is alleged that because of the confidential relationship existing between Sally Kane and her son, he has been able to exercise undue influence over her, and as a consequence, and by virtue of his complete control over her financial affairs, he has benefitted personally by obtaining gifts of money from her, by having her pay his personal and business obligations out of her funds, by purchasing substantial amounts of stock from her at a price far less than its true worth, and by causing her to invest in highly speculative and improper investments. It is alleged that as a result of these and other violations of the fiduciary obligation he owes to his mother, defendant has caused the estate of Sally Kane to be reduced in value from in excess of $1.5 million to less than $700,000.

Plaintiff also charges her brother has misled their mother into believing that she has given monies to the plaintiff as gifts while he is actually carrying them on her financial records as loans which, under Sally Kane's Will, must be offset against any ultimate share of her mother's estate that plaintiff will receive upon her mother's death. Similar amounts given to the defendant by his mother are said to be carried as gifts, so that defendant is hereby increasing his eventual share of his mother's estate that he will receive upon her death to the detriment of the share that his sister might expect to receive.

In short, and without attempting to detail all of the many wrongdoings alleged against the defendant in the second count of the complaint, plaintiff is basing her claim for relief on the charge that her brother has violated the position of trust and confidence that he enjoys with his mother, and that through undue influence exercised upon her he has wasted and obtained for his own benefit more than half of Sally Kane's assets, as a direct result of which plaintiff now stands to inherit considerably less from her mother upon her mother's death than she would have expected to inherit but for the wrongful and self-dealing conduct of her brother.

Assuming as he must for the purposes of his motion to dismiss that the allegations of the second count are true, *Danby v. Osteopathic Hosp. Ass'n*, Del.Ch., 101 A.2d 308 (1953), *aff'd*, Del.Supr., 104 A.2d 903 (1954); *Cooch v. Grier*, Del.Ch., 59 A.2d 282 (1948), defendant argues that plaintiff has alleged no cause of action against him individually. He acknowledges that such facts, if true, would give rise to a cause of action against him by his mother, compare, *White v. Lamborn*, Del.Ch. (C.A. 4471, January 20, 1977), or, if it could be shown that Sally Kane was incompetent to manage her affairs because of age or infirmity, by a guardian appointed on her behalf pursuant to 12 *Del.C.* § 3914. But he argues that there is no cause of action in the plaintiff in her own right to seek relief for alleged undue influence practiced by him upon their mother, at least not during the mother's lifetime, based on the premise that it constitutes an intentional interference with her expectancy of inheritance.

It is conceded by the parties that there is no Delaware authority either recognizing or refusing to recognize the tort of intentional interference with an expectancy of inheritance. However, defendant cites numerous decisions from other jurisdictions which uniformly hold that the rights of an heir-apparent in the property of his ancestor do not vest until the death of the ancestor, and that as a consequence an heir has no enforceable interest, legal or equitable, in such property until his ancestor's demise.

Plaintiff concedes the existence of this line of authority. She says, however, that the defendant is missing the thrust of her claim. She says that she is not suing in an effort to enforce her interests in her mother's property. Rather, she is suing her brother for the injury done to her own interest—namely, her right that in the absence of wrongful interference by another she has a reasonable basis to expect that she will inherit from her natural parent upon the latter's death. In setting forth her position, plaintiff relies upon three things.

First, the *Restatement (Second) of Torts* specifically recognizes such a cause of action. Section 774B states as follows:

"One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

Secondly, in this jurisdiction it has been recognized that a cause of action will lie for tortious interference with a business or commercial expectancy. *Bowl-Mor Company, Inc. v. Brunswick Corporation*, Del.Ch., 297 A.2d 61 (1972), aff'd, Del.Supr., 297 A.2d 67 (1972). As a recommended extension of this principle of commercial law, it is stated as follows in Prosser, *Law of Torts* (4th Ed.1971) § 130:

"There is no essential reason for refusing to protect such noncommercial expectancies (interference with an expected gift or legacy under a will), at least where there is a strong probability that they would have been realized . . . ."

Thirdly, plaintiff places heavy reliance on the recent decision of the Supreme Judicial Court of Maine in *Harmon v. Harmon*, Me. Supr., 404 A.2d 1020 (1979). In that case, which the Court characterized as being "[s]omewhere near the frontier of the expanding field of law relating to tortious interference with an advantageous relationship," a factual situation was presented which was strikingly similar to the situation presented here.

In *Harmon* one brother sued another, charging that by fraud and undue influence practiced upon their 87 year old mother who was in a poor state of health, the defendant had caused the mother to convey to him property which, under the terms of her Will, was to be devised to both brothers equally. The mother was still living and the defendant moved to dismiss, both for failure to state claim and because his brother lacked standing to proceed against him in his own right. On appeal, the dismissal of the action on these grounds was reversed. Making reference to early cases which recognized a cause of action in tort for interference with an existing employment relationship, and for interference with the rights of a person as a beneficiary under a contract of life insurance, the Court stated as follows at 404 A.2d 1023:

"If the law protects a person from interference with an opportunity to receive a benefit by entering into contractual relations in the future, the same protection should be accorded to a person's opportunity to receive a benefit as a prospective legatee. The uncertainty attendant upon the expectancy is equivalent. Neither the employee nor the prospective legatee has any enforceable right to his likely benefit."

And at 404 A.2d 1024 the Court summarized as follows:

"We conclude that where a person can prove that, but for the tortious interference of another, he would in all likelihood have received a gift or a specific profit from a transaction, he is entitled to recover the damages thereby done to him.

[Citation omitted.] We apply this rule to the case before us where allegedly the Defendant son and his wife have tortiously interfered with the Plaintiff son's expectation that under his mother's will he would receive a substantial portion of her estate."

In reaching this decision, the *Harmon* Court relied heavily on Dean Prosser and on the *Restatement,* noting that "the claim of the Plaintiff son is to a loss of his expectancy, not to a loss of the actual property of his mother." 404 A.2d 1025.

As a consequence of the foregoing, it clearly appears that the plaintiff here is asking that the *Harmon* rationale be adopted as the law of Delaware so as to enable the claim set forth in the second count of the complaint to survive the motion to dismiss. However, I find it unnecessary to reach a decision on this point. I say this because even under the plaintiff's authorities, as I read them, the second count must be dismissed. I reach this conclusion for two reasons.

First, plaintiff's authorities recognize a cause of action where one has been prevented from receiving an inheritance. Under the facts alleged here, plaintiff has not been disinherited or deprived of an expected right to any specific devise, bequest or legacy that she would have otherwise received from her mother. Rather, her complaint goes to the reduction in the amount that she feels she should be entitled to receive. And, as I read them, her authorities do not go that far. In other words, plaintiff has not been disinherited as the plaintiff was held to be in *Harmon.* Along with her brother, she still stands to receive one-half of the income from her mother's residual trust estate upon her mother's death, with a power of appointment over one-half of the trust principal. Her complaint now is that because of her brother's conduct her one-half will not be as large as she had a right to expect. But the right on which she seeks to rely is an expectation that she will receive what her mother had previously intended for her, and that is, essentially, one-half of her remaining estate

at death. Any wrongful conduct of the defendant has not eliminated that expectancy. It has only reduced the size of the expectancy, and I do not interpret plaintiff's authorities to mean that a cause of action in tort lies because one may ultimately receive less than the full amount that he was counting on receiving under a general bequest of a percentage or a portion of a person's estate. Perhaps that is still a bit beyond the frontier.

■ But even independent of this, there is another reason which requires that the plaintiff's individual cause of action against her brother be dismissed. Plaintiff's authorities indicate that the cause of action on which she relies is one in tort. The usual remedy for a tort action is money damages. Here, presumably, such monetary damage would be the loss that the plaintiff could establish that she will suffer upon her mother's death as a result of the dissipation of her mother's estate brought about by the alleged wrongful conduct of the defendant. However, plaintiff is not seeking money damages against her brother here. Rather, she is seeking an accounting, a surcharge, and the imposition of a constructive trust against him. In other words, she is seeking equitable relief.

The difficulty I have with this is that the mother, Sally Kane, is still living. With this in mind, it must be remembered that the basis for the plaintiff's cause of action is the alleged undue influence practiced upon Sally Kane by the defendant together with his alleged wrongful exploitation of the confidential relationship existing between him and his mother. It is through this means that plaintiff charges that the defendant has taken advantage of his mother for his own personal benefit and to the detriment of the plaintiff's otherwise reasonable expectation that she would eventually inherit a larger amount under her mother's will. Thus, the basis for the plaintiff's claim for relief in her own right lies in the wrongs allegedly perpetrated by the defendant upon their mother. Thus, I guess, plaintiff is saying that any such wrongs committed against her mother also

constitute a wrong against the plaintiff's personal right to reasonably expect to inherit from her mother.

Aside from getting a trifle far out as the justification for a present cause of action in tort, this theory has the following potential consequence when viewed in light of the equitable relief that plaintiff is seeking. It means that plaintiff is asking this Court of equity to preserve for her, and to require the defendant to presently account to her for, her fair share of that which the defendant has wrongfully taken from their still-living mother. No redress is sought on behalf of Sally Kane, the supposed victim of the defendant's alleged deceit. Rather, the plaintiff is asking the Court to marshal and impound in advance of her mother's death that portion of plaintiff's anticipated inheritance which she can prove at trial that her brother has obtained by improper means from their mother, and to enjoin him further from dealing with the assets of Sally Kane during the balance of the latter's lifetime. I do not feel this to be the type of relief as to which equity should lend its powers.

■ If Sally Kane were not living, it would be another matter. It has long been recognized that heirs or testamentary beneficiaries of a person deceased can maintain a suit in equity to set aside a transaction accomplished during the decedent's lifetime where it is contended that it was the product of undue influence or that it came about as the result of a violation for a confidential relationship, and where the effect has been to disinherit an heir or legatee. *McKnatt v. McKnatt*, Del.Ch., 93 A. 367 (1915).

■ But where a person has been caused to part with his property under such circumstances, and that person is still living, it is he, or the person appointed to act in his stead if he is under a disability, who has the cause of action to get it back, and the necessary corollary of that right is that the person who has obtained the property through undue influence, or through the violation of a fiduciary duty brought about by the existence of a confidential relation-

ship, has no right to retain it. *Swain v. Moore*, Del.Ch., 71 A.2d 264 (1950). It would seem to follow that if the person who thus wrongfully acquired such property has no right to retain it against the party thus victimized, then there should be no equitable right in a third person to seek an accounting, a surcharge, or the imposition of a constructive trust against the wrongdoer for a claimed share of that which the wrongdoer has no right to retain.

■ Where the facts are brought forth in an appropriate proceeding, it is the duty of a court of equity to protect an aged, infirm or dependent person from imposition, imprudence and the designs of others concerning the use and disposition of his property, and to order restitution, reconveyance or other equitable relief so as to restore to him that which was improperly or improvidently surrendered to another. *Swain v. Moore, supra.* To grant to the plaintiff the equitable relief that she is seeking here in her second cause of action would run contrary to that duty since it would be to ignore the rights of the party who, in theory, is in need of the Court's protection.

Accordingly, as alleged, I hold that the second count of the complaint alleges no cause of action in the plaintiff against the defendant as to which such equitable relief can be granted during the lifetime of Sally Kane.

I pass no judgment on whether or not plaintiff may have a present cause of action, in tort, for the recovery of money damages against her brother for his alleged tortious interference with her expectation of receiving an inheritance from her mother.

A form of order dismissing the second count of the complaint may be presented. Counsel having agreed at argument that a decision to the above effect would also render Paragraphs 4 and 8(e)(5) immaterial to the remaining allegations of the first count, they will be stricken from the complaint, and the form of order submitted may so reflect.