**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 4, 2024

Jason C. Powell, Esquire
The Powell Firm, LLC
1813 North Franklin Street
Wilmington, DE  19802

John S. Malik, Esquire
John S. Malik Law Office
100 East 14th Street
Wilmington, DE  19801

*Via U.S. Mail*
Cynthia L. Conners
18 Rankin Road
Newark, DE  19711

*Via U.S. Mail*
Judith L. Salecki
3 Saratoga Drive
Wilmington, DE  19808

John A. Sergovic, Jr., Esquire
Sergovic Carmean Weidman McCartney & Owens, P.A.
25 Chestnut Street
Georgetown, Delaware 19947

Thomas A. Uebler, Esquire
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE  19808

*Via U.S. Mail*
Gwen Thornton
1720 Bennington Drive
Harrisburg , PA 17112

Dear Counsel and Parties:

This letter addresses the motion to dismiss for lack of personal jurisdiction and for failure to state a claim filed by respondent Cheryl T. Patterson ("Respondent" or "Cheryl").  Cheryl's jurisdictional motion is denied; her motion for failure to state a claim is granted in part and denied in part.

## I.    BACKGROUND

The potential heirs of Lawrence Mergenthaler ("Decedent" or "Lawrence") have come to this Court seeking to sort through the disposition of his property.[1] Lawrence passed away on July 31, 2020.  Upon his death, Lawrence's substantial estate fell into limbo due to a mess of incomplete, contradictory, and questionable documents and a crowd of potential heirs.  According to the operative petition, Lawrence's three surviving children, Cynthia L. Connors, Gwen Thornton, and Judy Sulecki, are the primary beneficiaries of his estate.  Petitioner Devon Hamilton ("Petitioner" or "Devon"), as Cynthia's attorney-in-fact, asserts several people unduly influenced Lawrence into transferring assets to them and changing his will and trust to favor them.  Respondents Cheryl, Louise Lamborn ("Louise"), her son Josiah Lamborn ("Josiah"), Frederick Mergenthaler, and Tammy Quig (together with Cheryl, "Respondents") are accused of misappropriating Lawrence's assets in various ways.  Louise is presently the fiduciary for Lawrence's trust and estate.

---

[1] In this family dispute, in which many actors share the same surname, I use first names in pursuit of clarity.  I intend no familiarity or disrespect.  Relevant facts are drawn from the operative Third Amended Petition (the "TAP"), available at docket item ("D.I.") 109. Citations in the form of "OB" refer to Respondent Cheryl Patterson's Opening Brief In Support Of Her Motion To Dismiss Third Amended Petition, available at D.I. 168. Citations in the form of "AB" refer to Petitioner's Answering Brief And Opposition To Respondent, Cheryl Patterson's Motion To Dismiss Third Amended Petition, available at D.I. 172.  Citations in the form of "RB" refer to Respondent Cheryl Patterson's Reply In Support Of Her Motion To Dismiss Third Amended Petition, available at D.I. 176.

Devon brought this action to determine which documents properly dispose of Lawrence's property, who should administer his trust and estate, and who his heirs are and what they should receive.

This action has presented a myriad of issues on a multitude of fronts. This letter addresses only the claims against Cheryl. Cheryl is a Maryland resident and the daughter of Lawrence's spouse from a marriage that ended in divorce in 1995.[2] After her mother's death, Cheryl initiated multiple lawsuits against Lawrence.[3] Cheryl and Lawrence were estranged until the funds Cheryl received from those lawsuits dried up, at which time Cheryl "reinitiated contact with Decedent in Delaware."[4] Devon alleges Decedent suffered from cognitive impairment after a stroke in 2012, as well as anxiety, consistent memory loss, and dementia, and that as his health declined, Cheryl took advantage of him.[5] Devon alleges Cheryl conned Lawrence into sending her over $350,000 in two months, purporting to offer Lawrence a business investment opportunity, but then using the money to purchase real estate for herself in Maryland.[6] Lawrence paid her by "cash withdrawals and

---

[2] TAP ¶ 9.

[3] *Id.* ¶ 38.

[4] *Id.* ¶¶ 38–39.

[5] *Id.* ¶¶ 32–33, 39.

[6] *Id.* ¶ 39.

checks . . . written to sham businesses or to cash only to be ultimately possessed by Cheryl in her accounts in Maryland."[7]  Devon also alleges Lawrence was induced to revise beneficiary designations to Louise, Josiah, and Cheryl.[8]  Devon includes those funds sent to Cheryl, and altered beneficiary designations, in a broader category she calls "Challenged Distributions."[9]  Devon also alleges the Respondents, as a group, withheld Lawrence's testamentary documents when it suited them to do so, and prepared or manipulated the so-called "2012 and 2013 Amendments" to Lawrence's trust, which added Cheryl as a beneficiary.[10]

Devon's first petition, filed on September 21, 2020, did not name Cheryl as a respondent.[11]  On January 8, 2021, Devon amended her petition and added Cheryl.[12] The other Respondents answered the amended petition.[13]  Devon then filed a motion for judgment on the pleadings on a count seeking a declaration under a no-contest

---

[7] *Id.*

[8] *Id.* ¶ 36.

[9] *Id.*

[10] *Id.* ¶¶ 28, 29, 31.

[11] D.I. 1.  At that time, Cheryl was known as Cheryl T. Bell.  TAP ¶ 9.

[12] D.I. 19.

[13] D.I. 25.

provision,[14] followed by motions for interim injunctive relief and expedition.[15] Before being served with a summons, Cheryl's counsel filed an entry of appearance on June 1, 2021, without noting any reservation of rights as to personal jurisdiction.[16] A hearing on the motion for a temporary restraining order was held on June 17, 2021, and Cheryl's counsel appeared.[17]

On July 30, 2021, Devon moved for leave to file a second amended petition.[18] While that motion was pending, Devon filed a notice of service of discovery directed to Cheryl on January 13, 2022.[19] With leave, Devon filed her second amended petition on February 25; a summons was issued for Cheryl on March 3 and returned March 31.[20] On March 28, Cheryl filed a motion to dismiss under Rules 12(b)(2) and 12(b)(6), followed by an opening brief.[21] On March 16, Louise filed a motion for instructions as to how to administer Lawrence's estate while this suit was

---

[14] D.I. 30; D.I. 19 ¶¶ 47–52.

[15] D.I. 32; D.I. 33; D.I. 34.

[16] D.I. 46.

[17] D.I. 54; D.I. 55.

[18] D.I. 61.

[19] D.I. 77.

[20] D.I. 79; D.I. 80; D.I. 83; D.I. 97.

[21] D.I. 95; D.I. 104.

pending.[22]  On May 26, Devon filed a third amended petition (the "TAP").[23]  The TAP invokes several legal theories against Respondents.  Devon agrees Counts I, II, III, V, and VI do not apply to Cheryl.[24]  I read Count IV to assert a claim for breach of fiduciary duty against Cheryl.  Count VI seeks a caveat against the allowance of a codicil, review of proof of a will, and removal of Louise as executrix; that count pleads Respondents as a group exercised undue influence to cause Lawrence to execute the specified codicil and will.  Count VII asserts that the Challenged Distributions as well as the 2012 and 2013 Amendments are the product of undue influence by Respondents and should be rescinded.  Count VIII asserts a claim for unjust enrichment against all Respondents.  Count IX seeks a resulting trust, and Count X seeks a constructive trust.  Count XI asserts Respondents "tortiously interfered with the Petitioner's inheritance and/or economic rights" when they "fraudulently interfered with the Decedent's true wishes by influencing him to execute estate documents and in making distributions contrary to his wishes and intent."[25]  Count XII seeks books and records from Louise, and an accounting from

---

[22] D.I. 92.

[23] TAP.

[24] AB 39.

[25] TAP ¶¶ 101, 102.

Respondents. And Count XIII seeks damages from Respondents' failure to deliver Lawrence's will to the Register of Wills.

After the TAP was filed, the parties, including Cheryl, engaged in mediation on my order.[26] They agreed on a term sheet, but no final resolution.[27] Upon return to litigation in early 2023, the Respondents other than Cheryl moved to strike Devon's TAP.[28] Devon issued a summons to Cheryl.[29] Cheryl filed a response in support of Louise' motion for instructions.[30] In that response, Cheryl stated her intention to refile her motion to dismiss if the motion to strike was denied, but that the delay of litigation compelled her to speak up as to the petition for instructions.[31] Devon filed a reply to Cheryl's response and added a cross-motion to enforce the term sheet.[32] Cheryl responded to that cross-motion.[33] Then Cheryl moved to strike Devon's reply to Cheryl's response to the cross-motion.[34] I denied both the motion

---

[26] D.I. 114.

[27] D.I. 117; D.I. 163.

[28] D.I. 118.

[29] D.I. 110; D.I. 131.

[30] D.I. 141.

[31] *Id.* at 5 n.3. Devon interprets Cheryl's response as seeking a different outcome on Louise's motion. AB at 9.

[32] D.I. 144.

[33] D.I. 151.

[34] D.I. 157.

to strike the reply[35] and the motion to strike the TAP.[36] I granted in part the motion for instructions and denied the cross-motion to enforce the settlement.[37]

In December 2023, Cheryl filed a motion to dismiss the TAP's counts against her under Rules 12(b)(2) and 12(b)(6), followed by a January motion to stay discovery against her.[38] The parties briefed those motions.[39] I denied the motion to stay discovery[40] and took the motion to dismiss under advisement on February 6, 2024.[41]

Motion practice continued, but, like the years of motion practice to date, failed to meaningfully advance the action. In July, I referred the matter to mandatory mediation but retained Cheryl's motion to dismiss.[42]

---

[35] D.I. 161.

[36] D.I. 162.

[37] D.I. 163.

[38] D.I. 165; D.I. 171.

[39] D.I. 171; D.I. 174; D.I. 184.

[40] D.I. 185.

[41] D.I. 186.

[42] D.I. 202.

## II. ANALYSIS

I address personal jurisdiction first, as substantive review requires jurisdiction.[43] I find that Cheryl may have waived her right to assert a jurisdictional defense, but in any event, on a plaintiff-friendly reading of the TAP, Devon has established a prima facie case of personal jurisdiction over Cheryl. Cheryl's motion for failure to state a claim secures dismissal of the counts for breach of fiduciary duty and tortious interference with inheritance, but not the rest.

### A. Personal Jurisdiction

I must first address Devon's contention that Cheryl waived her right to the defense by participating in this litigation. If she did not, the traditional personal jurisdiction analysis would follow.

#### 1. Waiver of Personal Jurisdiction Defense

Devon asserts Cheryl waived her right to a personal jurisdiction defense by not filing a timely motion and by actively participating in the litigation. "The personal jurisdiction defense may be lost by failure to assert it seasonably, by formal

---

[43] *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim.").

submission in a cause, or by submission through conduct."[44] Devon contends Cheryl consented to this Court's jurisdiction through her actions.

First, before Cheryl was served, Cheryl's counsel filed an entry of appearance without objecting to jurisdiction in a Rule 12(b) motion or any other way.[45] Court of Chancery Rule 5 in its form at the time stated that "a defendant may appear though a summons had not been served upon the defendant. Appearance may be made by the service and filing of notice thereof, or by the service or filing of any motion or pleading purporting to be responsive to or affecting the complaint."[46] Court of Chancery Rule 12(h) provides that a personal jurisdiction defense is waived if not raised either by motion before any responsive pleading, in a responsive pleading, or in a permitted amendment to the responsive pleading. [47] Modern Rules 5 and 12 were designed to do away with the archaic requirement that a defendant make a redundant, and unnecessary, special appearance for the purposes of pursuing a service or jurisdictional defense.[48] Defenses to jurisdiction can be asserted with a

---

[44] *In re Asbestos Litig.*, 2015 WL 556434, at *4 (Del. Super. Jan. 30, 2015).

[45] D.I. 46.

[46] Ct. Ch. R. 5(aa) (2015) (amended 2024). Rule 5 was revised, effective July 12, 2024, to align its language with the federal rule and to conform to current practice. Similar language now appears in Ct. Ch. R. 5(i).

[47] Ct. Ch. R. 12(h)(2).

[48] *Canaday v. Superior Court*, 119 A.2d 347, 351, 353 (Del. 1956); *Quinn v. Keinicke*, 700 A.2d 147, 150–51 (Del. Super. 1996) (relating the abolishment of the distinction between

timely Rule 12(b) motion, in lieu of a special appearance.[49]  But just because a special appearance is not required to preserve a jurisdictional defense does not mean a general appearance cannot waive the defense.  When a party enters her appearance before being served, and without reserving any rights to contest jurisdiction or filing a timely Rule 12(b) motion, that entry of appearance "may act as a waiver of claims under Rule 12."[50]  Such an entry of appearance "could be reasonably viewed as a waiver of personal jurisdiction."[51]

The parties offered no case law on this issue.  The only cases I could find considering an entry of appearance filed before service and unaccompanied by any reservation of rights or Rule 12(b) motion declined to find a waiver of personal jurisdiction given the complicated context in which the entry of appearance was

---

general and special appearances, and explaining, "[t]oday, the proper method for raising defects in jurisdiction is either to file a motion or to include the affirmative defense in the answer").

[49] *Canaday*, 119 A.2d at 353; *Quinn*, 700 A.2d at 150–51.

[50] *Nally's Auto Plaza, Inc. v. Wilson*, 2024 WL 1110948, at *3 (Del. Com. Pl. Mar. 14, 2024); *accord Quinn*, 700 A.2d at 151 (concluding a general appearance filed before service is complete, unaccompanied by a Rule 12 motion, admits personal jurisdiction); *First Union Nat'l Bank v. Harman*, 1996 WL 769343, at *5–6 (Del. Super. Dec. 31, 1996) (cautioning that an entry of appearance unaccompanied by a motion to dismiss risked waiver of jurisdictional defenses).

[51] *Nally's Auto Plaza*, 2024 WL 1110948, at *4.

filed.[52] This case was not so complicated: Cheryl simply entered her appearance before she was served, without any reservation of rights or Rule 12(b) motion. But, given this Court's preference for resolving disputes on the merits and the lack of any precedent I could find concluding such an appearance constitutes waiver, and because a plaintiff-friendly reading of the TAP establishes a prima facie case for personal jurisdiction, I will deny Cheryl's motion to dismiss on that basis rather than one of waiver.

Cheryl's other litigation conduct does not present any risk of waiver. A party's challenge to jurisdiction should be the "first defensive move."[53] At bottom, the question of waiver is "whether the defendant has abandoned a solely defensive posture and become an actor in the cause."[54] Minimal participation in the litigation

---

[52] *Id.* (concluding counsel's entry of an appearance after a failed service attempt, without any reservation of rights, was a "false start" that was offset by a delay of game in a late notice of appeal as well as fumbled service, and so the parties should "replay the down"); *Harman*, 1996 WL 769343, at *6 (declining to conclude an appearance reserving rights that was followed by a motion waived the right to object to the sufficiency of process due to the recency of *Quinn*, 700 A.2d 147, and the practice at the time of filing an entry of appearance reserving all rights in lieu of a Rule 12(b) motion); *see also Quinn*, 700 A.2d at 151 (deciding to construe an appearance reserving rights as a motion, not as a general appearance that would admit jurisdiction).

[53] *Ross Hldg. & Mgmt. Co. v. Advance Realty Grp., LLC*, 2010 WL 1838608, at *11 (Del. Ch. Apr. 28, 2010) (quoting *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contrs., Inc.*, 768 A.2d 983, 987–88 (Del. Super. 2000)).

[54] *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher P'rs*, 2001 WL 1641239, at *6 (Del. Ch. Dec. 4, 2001).

does not necessarily constitute waiver.[55]  Before Cheryl was served, she communicated, through counsel, with Devon on a number of matters including extension requests, stipulations, and other matters.[56]  Cheryl's first defensive move in this matter was a motion to dismiss under Rule 12(b)(2).[57]  While Cheryl's motion to dismiss was pending, she participated in mediation and weighed in on ancillary matters:  the interim administration of Lawrence's estate, whether a settlement agreement had been reached, and the propriety of another party's filing with regard to the settlement agreement.[58]  Certainly, a mediation does not waive a jurisdictional defense.  Cheryl's litigation participation occurred in sideshows that did not address the claims against Cheryl.  And Cheryl reiterated her jurisdictional defense as she weighed in on those matters.[59]  Her participation does not rise to the level of active

---

[55] *CelestialRX Invs., LLC v. Krivulka*, 2019 WL 1396764, at *17 (Del. Ch. Mar. 27, 2019) (concluding that acceding to being deposed before being added as a party did not waive a personal jurisdiction defense); *Ross Hldg.*, 2010 WL 1838608, at *5, *12 (finding a defendant did not become an active actor for purposes of waiver despite having "actively participated as a party in this case, including filing an answer, defending against and filing motions, and serving and responding to discovery"); *In re Asbestos Litig.*, 2015 WL 556434, at *5 (finding a defendant who raised a personal jurisdiction defense in its answer, served and responded to discovery, and filed motions related to personal jurisdiction was not an active actor).

[56] AB 8–9.

[57] D.I. 95; D.I. 104.

[58] D.I. 115; D.I. 141; D.I. 151; D.I. 157.

[59] D.I. 141 at 5 n.3.

involvement that would constitute waiver of her personal jurisdiction defense, which she preserved throughout.

## 2. Statutory Jurisdiction

A plaintiff does not bear the initial burden of establishing the Court's personal jurisdiction over the defendant.[60] But once a defendant moves to dismiss under Rule 12(b)(2), if the Court does not hold an evidentiary hearing, then a plaintiff "need only make a prima facie showing, in the allegations of the complaint, of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[61] The Court need not "credit conclusory allegations that are not supported by specific facts, or draw unreasonable inferences in the plaintiff's favor."[62] "The court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice."[63] Courts construe the statute "broadly . . . to confer jurisdiction to the maximum extent

---

[60] *Harris v. Harris*, 289 A.3d 277, 295 (Del. Ch. 2023).

[61] *Id.* at 296 (internal quotation omitted); *see id.* ("If the court takes that approach, then the jurisdictional question technically remains open until trial, when the plaintiff must prove the jurisdictional facts by a preponderance of the evidence.").

[62] *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

[63] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

possible under the Due Process Clause."[64]  For statutory authorization, Devon looks

to 10 *Del. C.* §§ 3104(c)(1) and (c)(3).[65]

Sections (c)(1) and (c)(3) are "single act" statutes that require a forum-related

act or omission within Delaware.[66]  For those sections, "[t]he dual reference to

'within the State' indicates that the draftsman intended that there be two separate

events, each within the State."[67] "Literally, Delaware law requires both a tortious act

within the State and an act or omission within this State."[68]  "Alleging a tortious

injury occurred in Delaware is not enough to satisfy [Section 3104](c)(3).  Delaware

law requires plaintiffs also to establish that the out-of-state defendant committed an

act or omission in Delaware."[69]  Because Sections (c)(1) and (c)(3) confer specific

---

[64] *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

[65] AB at 11–15; 10 *Del. C.* § 3104(c)(1) (affording statutory jurisdiction over one who "transacts any business or performs any character of work or service in" Delaware); *id.* § 3104(c)(3) (affording statutory jurisdiction over one who "causes tortious injury in the State by an act or omission in" Delaware).

[66] *SDF Funding LLC v. Fry*, 2022 WL 1521309, at *2 (Del. Ch. May 13, 2022).

[67] *Ramada Inns, Inc. v. Drinkhall*, 1984 WL 247023, at *2 (Del. Super. May 17, 1984).

[68] *Id*.

[69] *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *6 (Del. Super. Sept. 30, 2016); *accord Hartsel v. Vanguard Grp, Inc.*, 2011 WL 2421003, at *14 (Del. Ch. June 15, 2011) (requiring, "consistent with notions of due process, a factual showing that a tangible act or omission actually took place in Delaware" even if plaintiffs prove a Delaware situs of injury).

jurisdiction, there must be a link between the cause of action and the defendant's conduct.[70] The act or omission in the state must cause the injury in the state.[71]

Devon has plainly pled Cheryl caused an injury in Delaware. "[A]s a result of [Respondents'] undue influence,"[72] the TAP pleads Lawrence made the Challenged Distributions, withdrew cash, and executed the suspicious testamentary documents from his location in Delaware.[73] Devon argues that those improper distributions and documents "represent[] offensive conduct in Delaware" that injured Lawrence, his Delaware estate, and his Delaware trust.[74]

The question is whether Devon has established a prima facie case that Cheryl committed an act within Delaware. Answering this question requires resolving how the TAP should be read. Cheryl insists the TAP does not plead that Cheryl, a Maryland resident, was ever physically present in Delaware when committing the tortious conduct. Devon responded, "Not so."[75] Devon contends the TAP pleads that Cheryl influenced Lawrence to execute the 2012 and 2013 Amendments in

---

[70] *Rotblut*, 2016 WL 5539884, at *4.

[71] *Donaldson v. Progressive Advanced Ins. Co.*, 2022 WL 951260, at *2 (Del. Super. Mar. 29, 2022).

[72] TAP ¶ 36; *accord id.* ¶ 39.

[73] *Id.* ¶ 39.

[74] AB 13.

[75] *Id.* at 12.

Delaware, and that while "assisting Lawrence in Delaware," Cheryl caused certain Challenged Distributions.[76]   Devon is entitled to a plaintiff-friendly reading of her complaint and to the resolution of any factual disputes in her favor. [77]   At this stage, I must construe the TAP as alleging that Cheryl conducted those acts in Delaware. On that basis, Devon has established a prima facie case that Section 3104(c)(3) is satisfied.  She will be put to her proof of personal jurisdiction at trial.[78]

### 3.  Constitutional Due Process

Even though the long arm statute is satisfied, constitutional requirements of the due process clause must be met.[79]   The long-established due process test for personal jurisdiction requires "sufficient minimum contacts between the defendant and Delaware such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[80]

Neither Devon nor Cheryl seriously engaged with the constitutional element of personal jurisdiction.[81]   If Cheryl came to Delaware to unduly influence a

---

[76] *Id.* at 13 (citing TAP ¶ 39).

[77] *Harris*, 289 A.3d at 296.

[78] *Id.*

[79] *Id.* at 297.

[80] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[81] OB 10; AB 18.

Delaware citizen and cause him to change his testamentary documents, and defraud him of substantial assets in his final years, she should reasonably anticipate being haled into a Delaware court. The due process element is satisfied.

### B. Failure To State A Claim

Satisfied with Devon's prima facie case that this Court has personal jurisdiction over Cheryl, I turn to Cheryl's arguments that the TAP fails to state a claim.

First, the parties would benefit from clarity as to which counts actually assert causes of action against Cheryl. Devon has clarified that she is not asserting counts seeking to establish which documents and persons control Lawrence's trust and estate against Cheryl.[82] Counts IX, X, XII, and XIII seek remedies and are not standalone causes of action; I do not consider their propriety today.[83]

The TAP asserts four causes of action against Cheryl. Count IV asserts Cheryl has breached her fiduciary duties and seeks a surcharge "for the monetary amount of funds misappropriated from the Decedent," which I read to be the funds taken

---

[82] AB 39 (addressing Counts I, II, III, V, and VI).

[83] *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at \*25 (Del. Ch. May 5, 2010) ("So long as the underlying cause of action is well plead, requested relief styled as a claim will not be stricken from the complaint.").

from him while he was alive.[84]   Count VII seeks rescission of those Challenged Distributions, as well as the 2012 and 2013 Amendments and any transfers pursuant to those documents, on the grounds that they are the product of Cheryl's undue influence.  Count VIII is a claim for unjust enrichment based on both the Challenged Distributions and the 2012 and 2013 Amendments.  Count XI is a count for tortious interference with prospective inheritance based on the Challenged Distributions and Lawrence's "estate documents."[85]   And Count XIII asserts all the Respondents withheld Lawrence's 2016 will in violation of 12 *Del. C.* § 1301, and seeks damages.

### 1. Laches

Cheryl argues Counts IV, VII, VIII, and XI should be barred by laches because Petitioner delayed unreasonably in bringing a claim against her by not including her in the first petition and bringing suit against her before the three-year presumptive statute of limitations in 10 *Del. C.* § 8106 ran on the 2017 Challenged Distributions. Devon responds that Section 8106 was tolled by 10 *Del. C.* § 8116 because Lawrence was suffering from incompetency of mind, so the limitations period did not begin to run until Lawrence's death, and that in any event Cheryl suffered no prejudice from the delay between the September 21, 2020 first petition and the January 8, 2021

---

[84] TAP ¶ 72.

[85] *Id.* ¶ 102.

second petition, which named her as a Respondent. Cheryl contends Section 8116 does not apply to Devon's claims.

Laches is an equitable defense meant to protect defendants against prejudice from the unreasonable delay of a plaintiff in bringing an action.[86] Generally, the defense of laches requires that (1) plaintiff knew of a legal claim, (2) delayed unreasonably in bringing the claim, and (3) caused the defendant to suffer prejudice as a result of that delay.[87] When considering equitable claims or equitable relief, this court of equity focuses on prejudice from delay more than the mechanical passage of time: statutes of limitation are not binding in courts of equity.[88] "[T]he laches inquiry is principally whether it is inequitable to permit a claim to be enforced, the touchstone of which is inexcusable delay leading to an adverse change in the condition or relations of the property or the parties."[89]

Cheryl does not even pretend to have suffered any prejudice from the one-hundred-and-nine day period between Devon's first petition and the second, when

---

[86] *Deputy v. Deputy*, 2020 WL 1018554, at *47 (Del. Ch. Mar. 2, 2020), *aff'd*, 281 A.3d 566, 2022 WL 2813779 (Del. July 18, 2022) (TABLE).

[87] *Id.*

[88] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

[89] *Id.*

she added Cheryl as a Respondent.[90]  In the absence of any argument whatsoever that Cheryl has suffered any prejudice from this slight delay, I deny her motion on the basis of laches.

## 2. Merits

Cheryl propounds several arguments as to why the TAP does not state a claim against her.  One theme is that Devon (as attorney-in-fact for a beneficiary of Lawrence's trust and estate) is the wrong plaintiff to bring claims to recoup Lawrence's property, as Louise is the trustee and executor.  From there, Cheryl argues the TAP fails to adequately plead the merits of the claims against her.

## a. Standing

Devon brings her claims against Cheryl in her capacity as the attorney-in-fact of Cynthia, a beneficiary of Lawrence's estate.  In so many words, the claims assert that by causing Lawrence to make the Challenged Amendments and Challenged Distributions, Cheryl deprived Cynthia of her rightful portion of Lawrence's property.  The executor of Lawrence's estate has standing to bring claims Lawrence could have brought while he was alive,[91] and neither Devon nor Cynthia is Lawrence's executor; Louise is.  But the question is not whether Cynthia can bring

---

[90] OB 13–14; RB 9–10.

[91] 10 *Del. C.* § 3701.

claims that belonged to Lawrence; the question is whether Cynthia has standing to bring her own claims.[92]  As an heir and beneficiary, Cynthia plainly has standing to challenge Lawrence's testamentary and trust documents, including against Cheryl as framed in Counts VII, VIII, and XI.[93]  She would also have had standing by statute if Cheryl had acted for Lawrence under a power of attorney.[94]  But Cheryl challenges Cynthia's standing to bring (1) claims asserting the Challenged Distributions are the product of undue influence, and (2) claims asserting Cheryl breached any fiduciary duties she owed Lawrence.

"[W]here the issue of standing is related to the merits, a motion to dismiss is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1)."[95]  Under Court of Chancery Rule 12(b)(6), the Court first must determine whether the petitioner has pled facts from which it may reasonably be inferred that she has demonstrated a threat of a tangible injury.[96]  The plaintiff must have

---

[92] With this focus, I do not reach Devon's argument that with Louise, a wrongdoer, as executor, somebody besides Louise must bring this claim against Louise and her confederate Cheryl.  AB 31–32.

[93] *E.g.*, *Scholl v. Murphy*, 2001 WL 576224, at *5 (Del. Ch. May 7, 2001) ("Plaintiff's status as an intestate heir to the [decedent] is sufficient to make him an interested party.").

[94] 12 *Del. C.* § 49A-116(b).

[95] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1280 (Del. 2007).

[96] *Calagione v. City of Lewes Planning Comm'n*, 2007 WL 4054668, at *2 (Del. Ch. Nov. 13, 2007); *see also Dover Hist. Soc'y v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1109–10 (Del. 2003) ("The degree and manner of evidence that is required to establish standing

suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[97]

When assessing the pleadings to determine whether the petitioner has sufficiently alleged standing, "I construe all facts in favor of the petitioner."[98]

This Court has over the past couple decades built a library of precedent addressing standing to bring claims that a fiduciary misappropriated a decedent's assets while the decedent was alive. While statutory claims against one acting under a power of attorney may be brought only by those with statutory standing,[99] anyone

---

varies as the successive stages of any litigation proceeds. At the pleading stage, general allegations of injury are sufficient to withstand a motion to dismiss because it is "presume[d] that general allegations embrace those specific facts that are necessary to support the claim." (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

[97] *Dover Hist. Soc'y*, 838 A.2d at 1110 (quoting *Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175–76 (3d Cir. 2000), while noting "state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers'", quoting *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991)).

[98] *Calagione*, 2007 WL 4054668, at *2.

[99] *In re Burke Est.*, 2016 WL 4217752, at *4, *5 (Del. Ch. Aug. 10, 2016) (applying both classic principles of injury and 12 *Del. C.* § 49A-116); *Rambo v. Fischer*, 2022 WL 4180890, at *6 (Del. Ch. Sept. 13, 2022) (applying 12 *Del. C.* § 49A-116); *see Rende v.*

with standing to challenge a will or who has pled they should have that standing has standing to bring common law breach of fiduciary duty claims.[100] Cynthia has standing to bring a breach of fiduciary duty claim against Cheryl.

From there, Devon urges the Court to expand a beneficiary's standing to sue not just fiduciaries, but any person who misappropriated assets "while the decedent lacked capacity or was being unduly influenced."[101] This argument is consistent with the underpinnings of standing for fiduciary claims, which are based on whether the plaintiff has suffered an injury, not on the capacity in which the defendant acted.[102] Cynthia has standing to bring claims against Cheryl for misappropriating Lawrence's estate while he was alive.

---

*Rende*, 2023 WL 2180572, at *15 n.175 (Del. Ch. Feb. 23, 2023) (distinguishing the "power-of-attorney context" from the common law context).

[100] *Scholl*, 2001 WL 576224 (resolving whether an intestate heir had standing to seek review of a will, and making no independent analysis of standing to pursue claims that a fiduciary breached his duties to the decedent when the decedent was alive); *In re Corbett v. Corbett*, 2019 WL 6841432, at *5–6 (Del. Ch. Dec. 12, 2019) (concluding "[a] petitioner has standing to challenge a fiduciary's actions taken to the detriment of a decedent's estate where the petitioner has standing to challenge the decedent's will"); *Hill v. Myers*, 2020 WL 3171372, at *3 (Del. Ch. June 15, 2020); *Cecil v. Cecil*, 2024 WL 1138030, at *2 (Del. Ch. Mar. 15, 2024) (distinguishing a statutory claim challenging an action under a power of attorney).

[101] AB at 32.

[102] *Dover Hist. Soc'y*, 838 A.2d at 1110.

### b. Elements

From there, Cheryl asserts the TAP fails to state a claim. When considering a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court should accept all well-pled factual allegations as true, accept even vague allegations if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.[103] If the well-pled allegations of the complaint would entitle the plaintiff to relief under a reasonably conceivable set of circumstances, the court must deny the motion to dismiss.[104]

First, Cheryl contends Count IV fails to plead she was ever Lawrence's fiduciary. Cheryl acknowledges the TAP's allegation that she "acted in a fiduciary capacity for Decedent due to the confidential relationship between the parties,"[105] but describes that allegation as conclusory. Cheryl also points out Lawrence had a fiduciary: Louise, who held his power of attorney. In opposition, Devon asserts the TAP has pled Cheryl "was actively providing care for him in a manner that gives

---

[103] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs, LLC*, 27 A.3d 531, 536 (Del. 2011).

[104] *Id.*

[105] OB 23 (quoting TAP ¶ 71)

rise to fiduciary obligations."[106]  That sentence, equating caregiving with being a fiduciary, does not rescue the TAP from being conclusory.  I conclude Devon "has not pled facts supporting her conclusory allegation and suspicion that a fiduciary relationship existed between [Cheryl] and [Lawrence]."[107]  Count IV is dismissed.

Next, Cheryl contends the TAP fails to plead Cheryl secured assets from Lawrence, and the 2012 and 2013 Amendments, by exerting undue influence over him.

> An undue influence claim must be supported by well-pleaded facts as to the following elements: "(1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and, (5) a result demonstrating its effect."[108]

The petitioner must "plead facts meeting each and every element of the claim."[109]

Where the undue influence is alleged to have altered testamentary documents, the

---

[106] AB 31 (citing TAP ¶¶ 35–39, 62, 71).  As explained, I gave the TAP a plaintiff-friendly read to infer Cheryl had conducted at least one act in Delaware.  It would go too far to infer Cheryl's contact with Lawrence put her in a position of such trust as to make her a fiduciary. Devon also argues Cheryl was "actively working with Louise."  AB 31.  Fiduciary status is not contagious:  working with a fiduciary does not make one a fiduciary.  That is the foundation of the idea of aiding and abetting.

[107] *See Glass v. Baker*, 2021 WL 4073448, at *2 (Del. Ch. Apr. 13, 2021).

[108] *Sweeney v. Sweeney*, 2021 WL 5858688, at *4 (Del. Ch. Nov. 30, 2021) (quoting *In re Estate of West*, 522 A.2d 1256, 1264 (Del. 1987)).

[109] *In re LW&T of Hurley*, 2014 WL 1088913, at *5 (Del. Ch. Mar. 20, 2014).

allegations must overcome the presumption that a testator had sufficient testamentary capacity.[110] The TAP's allegations have done so.

The TAP alleges Lawrence was a susceptible testator. "There is no single definition or defining feature of susceptibility, but the analysis is informed by the subject's capacity. Evidence of a testator's dependence on another, or a particular predisposition to accede to the demands of another person, may be sufficient to show susceptibility."[111] The TAP pleads that Lawrence's health and cognition declined substantially in the last decade of his life due to a series of strokes, anxiety disorder, memory loss, and dementia;[112] and that as a result, he was at constant risk of those looking to take advantage of him, relied on Respondents for assistance, could not discern the motives and influence of designing persons, and was easily persuaded to engage in transactions that benefitted others at his own expense, which he never would have conducted but for his cognitive impairments and outside pressure.[113]

---

[110] *Id*. at *4.

[111] *See Hurley*, 2014 WL 1088913, at *6 (internal citations omitted); *accord Ray v. Williams*, 2020 WL 1542028, at *32 (Del. Ch. Mar. 31, 2020).

[112] TAP ¶¶ 32–33.

[113] *Id.* ¶¶ 10, 11, 34–35.

The TAP alleges Cheryl had the opportunity to exert influence, actually did so, and a result demonstrating that effect.[114]  It alleges that Respondents isolated Lawrence, and that after a period of estrangement, Cheryl reinitiated contact with Lawrence; that she assisted him, and he became reliant on her and her assistance; and that she caused Lawrence to remit funds to her by misrepresenting that he was investing in a business.[115]  The TAP alleges Cheryl obtained at least $350,000.00 from Lawrence in September and October 2017.[116]

And the TAP alleges Cheryl had the disposition to exert influence for an improper purpose.  That element "may be satisfied where the alleged influencer stood to benefit financially from such action under circumstances in which the alleged influencer's continued ability to support himself was dependent on the challenged transaction."[117]  The TAP alleges that for a time, Cheryl received funds from lawsuits she had initiated against Lawrence, but that when those dried up, she

---

[114] *See West*, 522 A.2d at 1264–65 (noting the element of actual exertion requires more than a mere opportunity to influence and motive); *Ray*, 2020 WL 1542028, at *32 ("Actual exertion cannot be satisfied where the action is consistent with the individual's intent.").

[115] TAP ¶¶ 37–40.  Here, as in the personal jurisdiction analysis, I am reading the TAP with a plaintiff-friendly eye as to Cheryl's engagement with Lawrence.

[116] *Id.* ¶ 39.

[117] *Ray*, 2020 WL 1542028, at *32 (cleaned up).

approached him to reconcile and began securing the Challenged Distributions, which she needed to live.[118]

Cheryl also asserts Devon failed to plead a claim for unjust enrichment. To support a standalone claim for unjust enrichment, a plaintiff must plead: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, and (4) the absence of justification for the benefit.[119] "Technically, [impoverishment] is not a necessary element."[120] "A person who is unjustly enriched at the expense of another is subject to liability in restitution."[121] "The claim is about unjust enrichment, not impoverishment."[122] Devon pled Cheryl exercised undue influence to secure the Challenged Distributions from Lawrence and be named as an additional beneficiary under his trust. She has pled an unjustified enrichment.

Finally, Cheryl points to Count XI, for tortious interference with prospective inheritance, and observes that no Delaware court has recognized that cause of

---

[118] TAP ¶¶ 38–39.

[119] *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 390–91 (Del. 2023) (citing *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 351 (Del. Ch. 2022)).

[120] *Principal Growth Strategies, LLC v. AGH Parent, LLC*, 2024 WL 274246, at *12 (Del. Ch. Jan. 25, 2024).

[121] Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. L. Inst.), Westlaw (database updated Oct. 2023).

[122] *Principal Growth Strategies*, 2024 WL 274246, at *12.

action.[123]  Devon does not dispute that this is the law, but suggests this Court should either adopt the cause of action now, or permit the cause of action to proceed through discovery and consider its viability after trial.[124]  Even if Delaware were to recognize that cause of action, Delaware precedent indicates it would not do so for diminishment of the size of an expectancy; the "frontier" of the tort ends at the deprivation of "an expected right to any specific devise, bequest or legacy that [plaintiff] would have otherwise received."[125]  Count XI is for a diminishment of the size of Cynthia's expectancy.  It is beyond the frontier of the tort, even if Delaware recognized it.  It is dismissed.

## III.  Conclusion

Cheryl's motion to dismiss for lack of personal jurisdiction is **DENIED.**  Her motion to dismiss for failure to state a claim is **GRANTED** as to Counts IV and XI, but **DENIED** as to the rest.  I hope that this guidance is helpful to the other parties as they continue to mediate this longrunning, yet barely advanced, dispute.

---

[123] *Ray*, 2020 WL 1542028, at \*35; *Mitchell v. Reynolds*, 2009 WL 132881, at \*13 (Del. Ch. Jan. 6, 2009); *Chambers v. Kane*, 424 A.2d 311, 315 (Del. Ch. 1980), *aff'd in part, rev'd in part on other grounds*, 437 A.2d 163, 164 (Del. 1981).

[124] AB 37–38.

[125] *Chambers*, 424 A.2d at 315.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*